**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ML-CFC 2007-6 PUERTO RICO PROPERTIES, LLC<br><br>Plaintiff,<br><br>v.<br><br>BPP RETAIL PROPERTIES LLC,<br><br>Defendant. | CIVIL NO.: 17-1199 (PAD)<br><br><br>RE: COLLECTION OF MONIES, FORECLOSURE OF MORTGAGE AND OTHER RELIEF |

**AMENDED COMPLAINT**

**TO THE HONORABLE COURT:**

     **COMES NOW** Plaintiff ML-CFC 2007-6 Puerto Rico Properties, LLC (the "Lender" or "Plaintiff"). Plaintiff is acting herein by and though its special servicer, LNR Partners, LLC, solely in its capacity as special servicer and authorized representative for Plaintiff, through the undersigned attorneys, and very respectfully states, alleges, and prays as follows:

## I.    INTRODUCTION

    1.    This action concerns a loan originally issued by Countrywide Commercial Real Estate Lending Finance, Inc. ("Countrywide") to BPP Retail Properties LLC, a Delaware limited liability company (the "Borrower"), which is secured, *in part*, by certain real property located in the Commonwealth of Puerto Rico. Said property consists of six (6) shopping malls. This action is brought by the Plaintiff against the Borrower.

    2.    For purposes of the allegations in this Complaint, the Plaintiff/Lender, as the successor-in-interest to Countrywide, is the secured party of record for a loan which is secured by the assets and credit facilities detailed herein below, in the principal amount of Ninety-One Million Six Hundred Seventy-Five Thousand Dollars ($91,675,000.00) (the "Loan").

3.      The Loan matured on February 8, 2012, and the Borrower/Defendant is in default. The Loan is due and payable.

## II.  **THE PARTIES**

4.      Plaintiff, **ML-CFC 2007-6 Puerto Rico Properties, LLC** is a limited liability company duly organized under the Laws of the State of Delaware and authorized to do business in the Commonwealth of Puerto Rico. As set forth below, the citizenship of Plaintiff for diversity jurisdiction purposes is Ohio. Its mailing address is c/o LNR Partners, LLC, 1601 Washington Avenue, 7th Floor, Miami Beach, FL 33139.

5.      Defendant, **BPP Retail Properties, LLC** is a limited liability company duly organized under the Laws of the State of Delaware and authorized to do business in the Commonwealth of Puerto Rico. None of the individuals or corporations who are the Borrower's members are citizens of Ohio. Its principal offices are located at 680 Fifth Avenue, 24th Floor, New York, New York 10019.

## III.    **JURISDICTION AND VENUE**

6.      Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C. § 1332, since there is complete diversity of citizenship between the Plaintiff and Defendant and the amount in controversy in the Complaint, exclusive of interests and costs, exceeds seventy-five thousand dollars ($75,000.00).  Plaintiff is a limited liability company whose sole member is U.S. Bank National Association, as Trustee for the Registered Holders of ML-CFC Commercial Mortgage Trust 2007-6, Commercial Mortgage Pass-Through Certificates, Series 2007-6 ("Trust").  For purposes of diversity jurisdiction, a trust is a citizen of the state(s) in which its trustee is a citizen. *Navarro Savings Assoc. v. Lee*, 466 U.S. 458, 464 (1980).  The Trust is a "real estate mortgage investment conduit" (REMIC) created solely under the Internal Revenue Code, 26 U.S.C § 860D.

The REMIC investors are passive, and the REMIC trust acts by and through those entities authorized to act for the REMIC trust under its enabling document.  The citizenship of a REMIC trust is determined by the citizenship of its trustee.  *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465, 468-469 (S.D.N.Y. 2001) (ruling that the citizenship of LaSalle Bank National Association as Trustee for the Certificate Holders of Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates, Series 1997-D5 was that of the trustee and therefore, for purposes of federal jurisdiction, there was complete diversity); see also *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 899 (In determining the citizenship of the members of two LLC's, one of which was a trust and, citing to *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed. 2d 425 (1980), court held that the citizenship of the trust was the citizenship of its trustee.  *Id.*)

7.     A national banking association is a citizen of "the State in which its main office, as set forth in its articles of association, is located."  *Wachovia Bank, Nat'l Ass'n v. Schmidt, III,* 546 U.S. 303, 307 (2006); *accord, Rouse v. Wachovia Mortgage, FSB,* 747 F. 3d 707, 709 (9th Cir. 2013) ["a national bank is a citizen only of the state in which its main office is located"], *and see*, 28 U.S.C. § 1348.  The main office of the trustee, U.S. Bank National Association, as set forth in its articles of association, is located in Ohio, thus the citizenship of plaintiff for purposes of diversity jurisdiction is Ohio.

8.     The defendant Borrower is a limited liability company whose direct and indirect members are not residents of Ohio. For purposes of diversity jurisdiction, a limited liability company's citizenship is determined by the citizenship of its members.  Since the Lender's citizenship is Ohio, and the Borrower's citizenship is not Ohio, there is diversity between the parties.

9.      Venue is proper pursuant to 28 U.S.C § 1391 inasmuch as the real property and other guarantees that made the basis for this action are located in the Commonwealth of Puerto Rico.

### III.    GENERAL ALLEGATIONS

### A.    THE LOAN AND ITS NOTES

10.      On January 16, 2007 Countrywide and the Borrower executed a Loan Agreement (the "Loan Agreement"), pursuant to which Countrywide made a loan to Borrower in the principal amount of Ninety-One Million Six Hundred Seventy-Five Thousand Dollars (**$91,675,000.00**). See **Exhibit A.**

11.      That amount, disbursed to Borrower under the Loan Agreement, was evidenced by a promissory note issued on January 16, 2007 (the "Original Note"), and said principal indebtedness accrued interest at a fixed annual interest rate of six and four hundred ninety-four one thousandths percent (6.494%) per annum. See **Exhibit B.**

12.      On March 30, 2007, Countrywide and the Borrower executed an Omnibus Amendment Agreement, pursuant to which the Loan Agreement was modified and the Original Note was bifurcated into two separate replacement notes.  See **Exhibit C.**

13.      On March 30, 2007, Countrywide and the Borrower executed a Note Exchange Agreement ("Note Exchange Agreement.") (See **Exhibit D**), whereby the Original Note was exchanged and replaced in its entirety by the following two (2) promissory notes:

     i.      Replacement Promissory Note A issued by the Borrower on March 30, 2007 in the principal amount of EIGHTY-FOUR MILLION SIX HUNDRED AND SEVENTY-FIVE THOUSAND DOLLARS ($84,675,000.00). ("Replacement Promissory Note A"). See **Exhibit E**; and,

     ii.      Replacement Promissory Note B issued by the Borrower on March 30, 2007 in the principal amount of SEVEN MILLION DOLLARS

($7,000,000.00) ("Replacement Promissory Note B").  See **Exhibit F**.[1]

14.    Replacement Promissory Note A restated and evidenced the amount of Eighty-Four Million Six Hundred and Seventy-Five Thousand Dollars (**$84,675,000.00**) disbursed to the Borrower under the Loan Agreement and modified the fixed annual interest rate to six and thirty-nine one thousandths percent (6.039%) per annum, commencing on March 8, 2007.

15.    Replacement Promissory Note B restated and evidenced the amount of Seven Million Dollars (**$7,000,000.00**) disbursed to the Borrower under the Loan Agreement and modified the fixed annual interest rate to twelve percent (12%) per annum, also commencing on March 8, 2007.

### B.    ASSIGNMENT OF THE NOTES

16.    On July 10, 2007, Countrywide executed an Allonge by which it endorsed Replacement Promissory Note A to LaSalle Bank National Association, as Trustee for the Trust (the "Initial ML-CFC Trustee") ("Replacement Note A Allonge I").  See **Exhibit G.**

17.    Subsequently, the Initial ML-CFC Trustee executed an Allonge by which it endorsed Replacement Promissory Note A to U.S. Bank National Association, as Trustee for the Trust (the "ML-CFC Trustee") ("Replacement Note A Allonge II").  See **Exhibit H.**

18.    Subsequently, the ML-CFC Trustee executed an Allonge by which it endorsed Replacement Promissory Note A to Plaintiff ("Replacement Note A Allonge III", and together with the Replacement Note A Allonge I and Replacement Note A Allonge II, the "Replacement Note A Allonges").  See **Exhibit I.**

19.    On July 10, 2007, Countrywide executed an Allonge by which it endorsed

---

1 Plaintiff is not in possession of the original Replacement Promissory Note B, but received a Lost Note Affidavit from Wells Fargo Bank, National Bank, as successor to Wachovia Bank, National Bank. See Exhibit SSS.

Replacement Promissory Note B to HTM Fund I Subsidiary A LLC ("HTM Fund"), a Delaware limited liability company ("Replacement Note B Allonge I"). See **Exhibit J.**

20.     On the same date, the HTM Fund executed an Allonge by which it endorsed the Replacement Promissory Note B to HTM Fund 1 Trustee LLC, a Delaware limited liability, as trustee for and on behalf of the HTM Fund 1 Subsidiary A Grantor Trust, Series Blackpoint Puerto Rico Retail ("HTM Trust.") ("Replacement Note B Allonge II"). See **Exhibit K.**

21.     On December 16, 2008, Wachovia Bank, National Association, in its capacity as successor trustee for the HTM Trust for and on behalf of the HTM Trust, executed an Allonge by which it endorsed the Replacement Promissory Note B to Wachovia Bank, National Association, in its individual capacity (in such individual capacity, "Wachovia") ("Replacement Note B Allonge III"). See **Exhibit L.**

22.     On November 18, 2016, the Wells Fargo Bank, National Association, as successor to Wachovia, executed an Allonge by which it endorsed the Replacement Promissory Note B to Plaintiff for purposes of facilitating foreclosure proceedings. ("Replacement Note B Allonge IV", and together with the Replacement Note B Allonge I, the Replacement Note B Allonge II and the Replacement Note B Allonge III, the "Replacement Note B Allonges"). See **Exhibit M**.

23.     The Loan is guaranteed by, among others, six (6) Mortgage Notes, discussed below.

24.     Plaintiff is authorized to exercise all remedies necessary to redress the Borrower's default.

25.     As of February 1, 2017, the total amount due and outstanding under the Loan is $124,980,517.75 (the "Payoff Amount"), which is itemized as follows: (i) outstanding principal in the amount of $91,675,000.00; (ii) outstanding interest in the amount of $32,179,799.08; and, (iii)

Lender's costs in the amount of $1,584,045.29, it being understood that the Payoff Amount calculation includes a credit for (x) amounts held in reserve in the total amount of $57,825.20 and (y) amounts held in escrow in the total amount of $400,501.42.

### C.    MORTGAGE NOTES THAT GUARANTEE THE LOAN

26.    The Mortgage Notes that guarantee the Loan are the following:

(i)    Mortgage note executed by the Borrower on January 16, 2007, payable to the order of bearer, for the principal sum of **THIRTY SIX MILLION SIX HUNDRED THOUSAND DOLLARS ($36,600,000.00)** authenticated under affidavit number 7,909 of Notary Public José R. Jiménez Del Valle ("Mortgage Note I"). See **Exhibit N.**

(ii)    Mortgage note executed by the Borrower on January 16, 2007, payable to the order of bearer, for the principal sum of **EIGHTEEN MILLION THIRTY THOUSAND DOLLARS ($18,030,000.00)** authenticated under affidavit number 7,910 of Notary Public José R. Jiménez Del Valle ("Mortgage Note II"). See **Exhibit O.**

(iii)    Mortgage note executed by the Borrower on January 16, 2007, payable to the order of bearer, for the principal sum of **SIXTEEN MILLION FIVE HUNDRED SIXTY THOUSAND DOLLARS ($16,560,000.00)** authenticated under affidavit number 7,911 of Notary Public José R. Jiménez Del Valle ("Mortgage Note III"). See **Exhibit P.**

(iv)    Mortgage note executed by the Borrower on January 16, 2007, payable to the order of bearer, for the principal sum of **TWENTY FOUR MILLION DOLLARS ($24,000,000.00)** authenticated under affidavit number 7,912 of Notary Public José R. Jiménez Del Valle ("Mortgage Note IV"). See **Exhibit Q.**

(v)    Mortgage note executed by the Borrower on January 16, 2007, payable to the order of bearer, for the principal sum of **ELEVEN MILLION ONE HUNDRED NINETY THOUSAND DOLLARS ($11,190,000.00)** authenticated under affidavit number 7,913 of Notary Public José R. Jiménez Del Valle ("Mortgage Note V"). See **Exhibit R.**

(vi)    Mortgage note executed by the Borrower on January 16, 2007, payable to the order of bearer, for the principal sum of **THREE MILLION SIX HUNDRED THIRTY THOUSAND DOLLARS**

**($3,630,000.00)** authenticated under affidavit number 7,914 of Notary Public José R. Jiménez Del Valle ("Mortgage Note VI" and together with Mortgage Note I, Mortgage Note II, Mortgage Note III, Mortgage Note IV, Mortgage Note V and Mortgage Note VI, the "Mortgage Notes"). See **Exhibit S.**

27.    Those six (6) notes are secured by six (6) mortgages, encumbering properties in Bayamon, San Lorenzo, Guaynabo, Dorado, Levittown and Caguas, along with other guarantees/collateral, such as the leases and rents. All of the notes contain waivers of presentment, protest, demand and notice of non-payment.

## D.    THE MORTGAGES AND THEIR COLLATERAL

### a.    Mortgage I – Bayamón

28.    Mortgage Note I is guaranteed by a mortgage constituted through Deed Number 1 of January 16, 2007, before Notary Public José R. Jiménez Del Valle recorded pursuant to Act 215 of December 27, 2010 at property number 3,090 of Bayamón North, Registry of Property, Third Section of Bayamón ("Mortgage I"). See **Exhibit T.** That mortgage encumbers the following property in Bayamon:

Property number 3,090 has the following legal description:

"**URBAN**: Parcel of land located at Hato Tejas Ward, Municipality of Bayamón, Commonwealth of Puerto Rico, comprising a total area of eighty two thousand two hundred three point one hundred sixty nine square meters (82,203.169 m²) equivalent to twenty point eight thousand six hundred eighty two cuerdas (20.8682 cdas.) consisting of two portions of land separated by Bayamón Oeste Avenue (existing number two (2) street) where the Bayamón Oeste Shopping Center building and related parking area shall be constructed more particular described in survey plan entitled "Property of Parcel of Land to be used as lot for Bayamón Oeste Shopping Center" dated October twenty six (26), nineteen hundred seventy two (1972), prepared by Fehelley-Bartolomei-Camino-Architects as follows: Portion A. -Comprising an area of sixty thousand one hundred fifty one point nine thousand sixty nine square meters (60,151.9069 m²) equivalent to fifteen point three thousand fourty three cuerdas (15.3043 cdas.). It is bounded in the North, in a distance of three hundred thirteen point one hundred eighty meters (313.180 m.), by Pan American Investment; in the South, in a distance of one hundred twenty four point nine hundred fifteen meters (124.915 m.), by State Road number two (2); in

the East, in a distance of four hundred fourteen point two thousand seventy four meters (414.2074 m.), by Eugenio Padró, Justa Rosario, Patricio Román, Sucesión de Micaela Díaz, Rafaela Durán, Eustaquio Díaz, Pedro Díaz, and Luis Ortiz Urrutia; and in the West, in a distance of three hundred sixteen point seven hundred eighty five meters (316.785 m.), by Bayamón Oeste Avenue (existing street number two (2)).  Portion B. - Comprising an area of twenty one thousand eight hundred sixty eight point four thousand one hundred ten square meters (21,868.4110 m²) equivalent to five point five thousand six hundred thirty nine cuerdas (5.5639 cdas.).  It is bounded in the North, in a distance of one hundred eleven point four hundred eighty two meters (111.482 m.), by Bayamón Oeste Avenue (existing number two (2) street); in the South, in a distance of seventy two point two hundred eighty three meters (72.283 m.), by State Road number two (2); in the East, in a distance of two hundred fifty nine point eight hundred forty meters (259.840 m.), by Bayamón Oeste Avenue (existing number two (2) street); and in the West, in a distance of three hundred seventeen point six hundred twenty meters (317.620 m.), by International Harvester."

The property described above is recorded at page 290 of volume 673 property number 3,090 of Bayamón North, Registry of Property, Third Section of Bayamón ("Property No. 3,090").  See **Exhibit T**. See also December 2016 Sworn Title Search, **Exhibit U**.

29.    Mortgage I also created a voluntary mortgage and security interest upon additional property, including, but not limited to: (i) fixtures, (ii) chattels, (iii) all machinery, (iv) furnishings, (v) all of Mortgagor's rights and interest as landlord, to receive payments of money under the leases of the mortgaged property, and/or (vi) all rents and profits received from leasing such property.

30.    Further, and in event of default, Lender is entitled, *as a matter of right*, to have a court appoint a receiver for all or part of the mortgaged property, who will operate and manage the property and receive all earnings, income, and proceeds related to the property. See **Exhibit T** at Clause Eight (ii), pgs. 9-10.

### b.        Mortgage II – San Lorenzo

31.    Mortgage Note II is guaranteed by a mortgage constituted through Deed Number 2 of January 16, 2007, before Notary Public José R. Jiménez Del Valle recorded pursuant to Act 216

of December 27, 2010 at property number 16,861 of San Lorenzo, Registry of Property, Second

Section of Caguas ("Mortgage II").   See **Exhibit V.**   That mortgage encumbers the following

property in San Lorenzo:

> Property number 16,861 has the following legal description:
>
> "**URBAN**: Parcel of land of irregular form and undulated topography, located at the
> Hato Ward, Municipality of San Lorenzo, it is bounded on the North, in various
> sections that add up to eighty-eight point five hundred fifty-eight meters (88.558
> m.) with Municipal path, on the South, in an alignment from point one hundred
> sixty three (163) to one hundred seventy (170) of seventy two point seventy two
> meters (72.72 m.) with the Estate of Isaac Mangual and another alignment from
> point two (.2) to one hundred seventy-two (172) of one hundred sixty-eight point
> eight hundred thirty-three meters (168.833 m.) with the land of Ana Luisa
> Bragueras, on the East, in various sections that add up to five hundred thirty-eight
> point one hundred and sixty-one meters (538.161 m.) with the Estate of Issac
> Mangual and on the West, in various alignments and sections that add up six
> hundred fifty-three pint two hundred thirty meters (653.230 m.) with State Road
> number one hundred eighty three (183). Comprising a surface area of fourteen
> point nine thousand nine hundred and six acres (14.9906 ac.) (according to the
> registry) equivalent to fifty-eight thousand nine hundred nineteen point zero three
> square meters (58,919.03 m²), equal to five (5) hectares, eighty-nine (89) ares,
> nineteen (19) cetiares and three hundred (300) milliares."
>
> The property described above is recorded at page 10 of volume 350 of San Lorenzo,
> property number 16,861, Registry of the Property, Second Section of Caguas
> ("Property No. 16,861").  See **Exhibit V (translation ours)**. See also December
> 2016 Sworn Title Search, **Exhibit W**.

32.     Mortgage II also created a voluntary mortgage and security interest upon additional

property, including, but not limited to: (i) fixtures, (ii) chattels, (iii) all machinery, (iv) furnishings,

(v) all of Mortgagor's rights and interest as landlord, to receive payments of money under the

leases of the mortgaged property, and/or (vi) all rents and profits received from leasing such

property.

33.     Further, and in event of default, Lender is entitled, *as a matter of right*, to have a

court appoint a receiver for all or part of the mortgaged property, who will operate and manage the

property and receive all earnings, income, and proceeds related to the property. See **Exhibit V** at

Clause Eight (ii), pgs. 9-10.

### c.    Mortgage III – Los Jardines in Guaynabo

34.    Mortgage Note III is guaranteed by a mortgage constituted through Deed Number 3 of January 16, 2007, before Notary Public José R. Jiménez Del Valle recorded at page 106 of volume 1295, property number 26,798 of Guaynabo, Registry of Property, Section of Guaynabo ("Mortgage III").  See **Exhibit X.** The mortgage encumbers the following property:

Property number 26,798 has the following legal description:

"**URBAN**: PARCEL 'B'. Parcel of land located at the Frailes Ward of the Municipality of Guaynabo, Puerto Rico, with a surface area of twenty thousand five hundred four point eight thousand two hundred and forty-two square meters (20,504.8242 m²), equivalent to five point two thousand one hundred and seventy acres (5.2170 ac.).  Bound on the North, by one hundred five point eight hundred sixty-seven meters (105.867 m.), with the Egida del Colegio de Ingenieros, Arquitectos y Agrimensores de Puerto Rico; on the South, by four (4) different and continuous alignments which total thirty-one point four hundred thirty-two meters (31.432 m.), with La Esmeralda Avenue and land property of La Compañia de Fomento Industrial de Puerto Rico; on the East, with two (2) different and continuous alignments totaling one hundred eleven point zero thirty-nine meters (111.039 m.), with land of the Puerto Rico Land Authority, reserved for the widening of state road number twenty (PR # 20); and on the West, by one hundred seventy-eight point four hundred thirteen meters (178.413 m.), with land of the Athletic Complex of the Municipality of Guaynabo."
The property described above is recorded at page 110 of volume 673 of Guaynabo, property number 26,798, Registry of the Property, Section of Guaynabo ("Property No. 26,798").  See **Exhibit X (translation ours)**. See also December 2016 Sworn Title Search, **Exhibit Y**.

Mortgage III also created a voluntary mortgage and security interest upon additional property, including, but not limited to: (i) fixtures, (ii) chattels, (iii) all machinery, (iv) furnishings, (v) all of Mortgagor's rights and interest as landlord, to receive payments of money under all leases of all or part of the mortgaged property, and/or (vi) all rents and profits received from leasing such property.

35.    Further, and in event of default, Lender is entitled, *as a matter of right*, to have a

court appoint a receiver for all or part of the mortgaged property, who will operate and manage the property and receive all earnings, income, and proceeds related to the property. See **Exhibit X** at Clause Eight (ii), pgs. 9-10.

        **d.**      **Mortgage IV – Dorado**

36.      Mortgage Note IV is guaranteed by a mortgage constituted through Deed Number 4 of January 16, 2007, before Notary Public José R. Jiménez Del Valle, recorded at page entry 116 of diary 283, property number 14,943 of Dorado, Registry of Property, Fourth Section of Bayamón ("Mortgage IV"). See **Exhibit Z.** The mortgage encumbers the following property:

Property number 14,943 has the following legal description:

"**URBAN**: Parcel of land located on the Pueblo Ward of the Municipality of Dorado forming part of the Dorado del Mar Development, as commercial area, commonly known as the Dorado del Mar Shopping Center, with an area of forty-three thousand one hundred fifty-one point four thousand four hundred seventy-eight square meters (43,151.4478 s. m.), bounded on the North, by street number one (1) which provides access to the Dorado del Mar Development; on the South, with lots currently occupied by a McDonald's restaurant and the United States Postal Service; on the East, with the Dorado del Mar Development; and on the West, with State Road Puerto Rico Six Hundred Ninety-Three (PR-693). **Remnant B: URBAN**: Tract of land located on the Pueblo Ward of the Municipality of Dorado, Puerto Rico, with an area of two hundred twenty-five point zero two square meters (225.02 sq. mts.), bounded on the North, with subdivided parcel; on the South**,** with land where a hardware store and a supermarket used to be erected, as per inscription plan; on the East, with property where the United States Postal Service is located; and on the West, with parcel with the letter A, subdivided and dedicated to public use. **Remnant D: URBAN:** Tract of land located on the Pueblo Ward of the Municipality of Dorado, Puerto Rico, with an area of sixty-five point seventy-four square meters (65.74 sq. mts.), bounded on the North, in an angle, with parcels of the Dorado del Mar Development; on the South, with State Road Puerto Rico Six Hundred Ninety-Eight (PR-698); on the East, with parcels of the Dorado del Mar Development; and on the West, with remnant parcel (main tract of land) described above.

The property described above was formed by the grouping of property number 3,461 recorded at page 246 of volume 136 of Dorado, and property number 1,557 recorded at page 52 of volume 160 of Dorado, Registry of the Property, Fourth Section of Bayamón, pursuant to Deed Number 8 of January 16, 2007 of Notary

Public Ricardo O. Meléndez Sairí ("Property No. 14,943").  See **Exhibit Z**. See also December 2016 Sworn Title Search, **Exhibit AA**.

37.    Mortgage IV also created a voluntary mortgage and security interest upon additional property, including, but not limited to: (i) fixtures, (ii) chattels, (iii) all machinery, (iv) furnishings, (v) all of Mortgagor's rights and interest as landlord, to receive payments of money under the leases of the mortgaged property, and/or (vi) all rents and profits received from leasing such property.

38.    Further, and in event of default, Lender is entitled, *as a matter of right*, to have a court appoint a receiver for all or part of the mortgaged property, who will operate and manage the property and receive all earnings, income, and proceeds related to the property.  See **Exhibit Z** at Clause Eight (ii), pgs. 9-10.

### e.    Mortgage V – Levittown

39.    Mortgage Note V is guaranteed by a mortgage constituted through Deed Number 5 of January 16, 2007, before Notary Public José R. Jiménez Del Valle recorded at page 162 of volume 605, property number 29,587 of Toa Baja, Registry of Property, Second Section of Bayamón ("Mortgage V"). This property was formed by the grouping of property number 13,371 recorded at page 111 of volume 219 of Toa Baja, and property number 9,936, recorded at page 191 of volume 167 of Toa Baja, Registry of the Property, Fourth Section of Bayamón pursuant to Deed Number 9 of January 16, 2007 of Notary Public Ricardo O. Melendez Sairí.  See **Exhibit BB**. The mortgage encumbers the following property:

Property number 29,587 has the following legal description:

"**URBAN**: Parcel of irregular form located at the Sabana Seca of the Municipality of Toa Baja, with a surface area of fifteen thousand four hundred ninety-five point two thousand eight hundred seventy six square meters (15,495.2876 m²), commonly denominated Centro Comercial Los Dominicos, bound on the North, by Boulevards Levittown street and a parcel where a gas station is located; on the

South, with street number four hundred thirty (430) y con la parcel twenty-three eighty-nine; on the East, with the same parcel where the gas station is located an dwith the Los Dominicos Avenue; and on the West, with the street number four hundred one (401) and with the parcel twenty-three thousand eight-nine(23,089)." The property described above was formed by the grouping of property number 13,371 recorded at page 111 of volume 219 of Toa Baja, and property number 9,936, recorded at page 191 of volume 167 of Toa Baja, Registry of the Property, Fourth Section of Bayamón, pursuant to Deed Number 9 of January 16, 2007 of Notary Public Ricardo O. Meléndez Sairí ("Property No. 29,587"). See **Exhibit BB (translation ours)**. See also December 2016 Sworn Title Search, **Exhibit CC**.

40.      Mortgage V also created a voluntary mortgage and security interest upon additional property, including, but not limited to: (i) fixtures, (ii) chattels, (iii) all machinery, (iv) furnishings, (v) all of Mortgagor's rights and interest as landlord, to receive payments of money under the leases of the mortgaged property, and/or (vi) all rents and profits received from leasing such property.

41.      Further, and in event of default, Lender is entitled, *as a matter of right*, to have a court appoint a receiver for all or part of the mortgaged property, who will operate and manage the property and receive all earnings, income, and proceeds related to the property.  See **Exhibit BB** at Clause Eight (ii), pgs. 9-10.

### F.      Mortgage VI – Caguas

42.      Mortgage Note VI is guaranteed by a mortgage constituted through Deed Number 6 of January 16, 2007, before Notary Public José R. Jiménez Del Valle recorded at page 116 of volume 1706, property number 19,723 of Caguas, Registry of Property, First Section of Caguas. ("Mortgage VI" and together with Mortgage I, Mortgage II, Mortgage III, Mortgage IV, Mortgage V and Mortgage VI, the "Mortgages").  See **Exhibit DD**. The mortgage encumbers the following property:

Property number 19,723 has the following legal description:

"**URBAN**: Parcel of located at the Turabo of the Municipality of Caguas, Puerto

Rico, with an area of eight thousand two hundred and ninety-eight square meters (8,298.21 m²). Bound on the North, by Amor Street, before, today Georgette Street; on the South, by the extension of Bunker Street, before, today Monseñor Berrios Street; on the East, by Savaina neighborhood separated by Johnson Street, before, today Acosta Street; and on the West, with Central Street that leads from San Juan to Ponce, before, today Gautier Benitez Street, known also as State Road number one (1).

A two (2) story building resides within, known as Caguas Shopping Center."

The property described above is recorded at page 174 of volume 414 of Caguas, property number 19,723 (previously 10,969), Registry of the Property, First Section of Caguas ("Property No. 19,723").  See **Exhibit DD (translation ours)**. See also December 2016 Sworn Title Search, **Exhibit EE**.

43.      Mortgage VI also created a voluntary mortgage and security interest upon additional property, including, but not limited to: (i) fixtures, (ii) chattels, (iii) all machinery, (iv) furnishings, (v) all of Mortgagor's rights and interest as landlord, to receive payments of money under the leases of the mortgaged property, and/or (vi) all rents and profits received from leasing such property.

44.      Further, and in event of default, Lender is entitled, *as a matter of right*, to have a court appoint a receiver for all or part of the mortgaged property, who will operate and manage the property and receive all earnings, income, and proceeds related to the property.  See **Exhibit DD** at Clause Eight (ii), pgs. 9-10.

45.      Jointly, Property No. 3,090, Property No. 16,861, Property No. 26,798, Property No. 14,943, Property No. 29,587 and Property No. 19,723 (the "Properties") are to be foreclosed upon by the Plaintiff.

## F.      ASSIGNMENT OF THE PROPERTIES' LEASES AND RENTS

46.      As stated above, the real property which guarantees the Mortgage Notes consists of shopping malls.  Thus, in an effort to further secure the Loan obligations, Countrywide required

the Borrower to assign to it all rights to receive rents paid by tenants to Borrower under lease agreements related to the Properties, in the event of a default.  Notwithstanding that Countrywide had already secured that right pursuant to the Mortgages, Assignments of Rents (as defined below) were also executed in connection with that collateral.

47.      Besides receiving rents, said right grants the Lender the option, in the event a default occurs under the Loan, to either take possession and charge of the Properties, and/or have a receiver appointed by the Court to manage the Properties and apply the rents and proceeds towards the Borrower's indebtedness.

48.      On January 16, 2007, Countrywide and the Borrower executed an Assignment of Leases and Rents before Notary Public Leopoldo J. Cabassa Sauri under affidavit number 7,423, whereby the Borrower granted Countrywide a security interest over all rights, title and interest to the leases constituted in relation to and the rents generated at Property No. 3,090 ("Assignment of Rents I").  See Exhibit FF.  Thus, the security interest constituted over the leases and rents in relation to Property No. 3,090 was perfected by the execution of Assignment of Rents I before a Notary Public on the specified date.

49.      Countrywide executed an Assignment of Assignment of Leases and Rents, effective April 12, 2007, whereby Countrywide assigned the rights, title and interest to Assignment of Rents I to the Initial ML-CFC Trustee ("Assignment of Assignment of Rents I"). See Exhibit GG.

50.      Initial ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective June 30, 2008, whereby Initial ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents I, as previously assigned, to ML-CFC Trustee ("Second Assignment of Assignment of Rents I"). See Exhibit HH.

51. ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective September 26, 2016, whereby ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents I, as previously assigned, to Plaintiff ("Third Assignment of Assignment of Rents I"). See **Exhibit II**.

52. On January 16, 2007, Countrywide and the Borrower executed an Assignment of Leases and Rents before Notary Public Leopoldo J. Cabassa Sauri under affidavit number 7,424, whereby the Borrower granted Countrywide a security interest over all rights, title and interest to the leases constituted in relation to and the rents generated at Property No. 16,861 ("Assignment of Rents II"). See **Exhibit JJ**. Thus, the security interest constituted over the leases and rents in relation to Property No. 16,861 was perfected by the execution of Assignment of Rents II before a Notary Public on the specified date.

53. Countrywide executed an Assignment of Assignment of Leases and Rents, effective April 12, 2007, whereby Countrywide assigned the rights, title and interest to Assignment of Rents II to the Initial ML-CFC Trustee ("Assignment of Assignment of Rents II"). See **Exhibit KK**.

54. Initial ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective June 30, 2008, whereby Initial ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents II, as previously assigned, to ML-CFC Trustee ("Second Assignment of Assignment of Rents II"). See **Exhibit LL**.

55. ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective September 26, 2016, whereby ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents II, as previously assigned, to Plaintiff ("Third Assignment of Assignment of Rents II"). See **Exhibit MM**.

56.     On January 16, 2007, Countrywide and the Borrower executed an Assignment of Leases and Rents before Notary Public Leopoldo J. Cabassa Sauri under affidavit number 7,425, whereby the Borrower granted Countrywide a security interest over all rights, title and interest to the leases constituted in relation to and the rents generated at Property No. 26,798 ("Assignment of Rents III").  See **Exhibit NN**.  Thus, the security interest constituted over the leases and rents in relation to Property No. 26,798 was perfected by the execution of Assignment of Rents III before a Notary Public on the specified date.

57.     Countrywide executed an Assignment of Assignment of Leases and Rents, effective April 12, 2007, whereby Countrywide assigned the rights, title and interest to Assignment of Rents III to the Initial ML-CFC Trustee ("Assignment of Assignment of Rents III").  See **Exhibit OO**.

58.     Initial ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective June 30, 2008, whereby Initial ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents III, as previously assigned, to ML-CFC Trustee ("Second Assignment of Assignment of Rents III").  See **Exhibit PP**.

59.     ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective September 26, 2016, whereby ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents III, as previously assigned, to Plaintiff ("Third Assignment of Assignment of Rents III").  See **Exhibit QQ**.

60.     On January 16, 2007, Countrywide and the Borrower executed an Assignment of Leases and Rents before Notary Public Leopoldo J. Cabassa Sauri under affidavit number 7,428, whereby the Borrower granted Countrywide a security interest over all rights, title and interest to the leases constituted in relation to and the rents generated at Property No. 14,943 ("Assignment of

Rents IV"). <u>See</u> **Exhibit RR**. Thus, the security interest constituted over the leases and rents in relation to Property No. 14,943 was perfected by the execution of Assignment of Rents IV before a Notary Public on the specified date.

61.     Countrywide executed an Assignment of Assignment of Leases and Rents, effective April 12, 2007, whereby Countrywide assigned the rights, title and interest to Assignment of Rents IV to the Initial ML-CFC Trustee ("<u>Assignment of Assignment of Rents IV</u>"). <u>See</u> **Exhibit SS**.

62.     Initial ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective June 30, 2008, whereby Initial ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents IV, as previously assigned, to ML-CFC Trustee ("<u>Second Assignment of Assignment of Rents IV</u>"). <u>See</u> **Exhibit TT**.

63.     ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective September 26, 2016, whereby ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents IV, as previously assigned, to Plaintiff ("<u>Third Assignment of Assignment of Rents IV</u>"). <u>See</u> **Exhibit UU**.

64.     On January 16, 2007, Countrywide and the Borrower executed an Assignment of Leases and Rents before Notary Public Leopoldo J. Cabassa Sauri under affidavit number 7,427, whereby the Borrower granted Countrywide a security interest over all rights, title and interest to the leases constituted in relation to and the rents generated at Property No. 29,587. ("<u>Assignment of Rents V</u>"). <u>See</u> **Exhibit VV**. Thus, the security interest constituted over the leases and rents in relation to Property No. 29,587 was perfected by the execution of Assignment of Rents V before a Notary Public on a specified date.

65. Countrywide executed an Assignment of Assignment of Leases and Rents, effective April 12, 2007, whereby Countrywide assigned the rights, title and interest to Assignment of Rents V to the Initial ML-CFC Trustee ("Assignment of Assignment of Rents V"). See **Exhibit WW**.

66. Initial ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective June 30, 2008, whereby Initial ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents V, as previously assigned, to ML-CFC Trustee ("Second Assignment of Assignment of Rents V"). See **Exhibit XX**.

67. ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective September 26, 2016, whereby ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents V, as previously assigned, to Plaintiff ("Third Assignment of Assignment of Rents V"). See **Exhibit YY.**

68. On January 16, 2007, Countrywide and the Borrower executed an Assignment of Leases and Rents before Notary Public Leopoldo J. Cabassa Sauri under affidavit number 7,426, whereby the Borrower granted Countrywide a security interest over all rights, title and interest to the leases constituted in relation to and the rents generated at Property No. 19,723 ("Assignment of Rents VI". See **Exhibit ZZ**. Thus, the security interest constituted over the leases and rents in relation to Property No. 19,723 was perfected by the execution of Assignment of Rents VI before a Notary Public on the specified date.

69. Countrywide executed an Assignment of Assignment of Leases and Rents, effective April 12, 2007, whereby Countrywide assigned the rights, title and interest to Assignment of Rents VI to the Initial ML-CFC Trustee ("Assignment of Assignment of Rents VI"). See **Exhibit AAA**.

70.    Initial ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective June 30, 2008, whereby Initial ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents VI, as previously assigned, to ML-CFC Trustee ("Second Assignment of Assignment of Rents VI"). See **Exhibit BBB**.

71.    ML-CFC Trustee executed an Assignment of Assignment of Leases and Rents, effective September 26, 2016, whereby ML-CFC Trustee assigned the rights, title and interest to the Assignment of Rents VI, as previously assigned, to Plaintiff ("Third Assignment of Assignment of Rents VI"; together with Assignment of Rents I, Assignment of Rents II, Assignment of Rents III, Assignment of Rents IV, Assignment of Rents V, Assignment of Rents VI, Assignment of Assignment of Rents I, Assignment of Assignment of Rents II, Assignment of Assignment of Rents III, Assignment of Assignment of Rents IV, Assignment of Assignment of Rents V, Assignment of Assignment of Rents VI, Second Assignment of Assignment of Rents I, Second Assignment of Assignment of Rents II, Second Assignment of Assignment of Rents III, Second Assignment of Assignment of Rents IV, Second Assignment of Assignment of Rents V, Second Assignment of Assignment of Rents VI, Third Assignment of Assignment of Rents I, Third Assignment of Assignment of Rents II, Third Assignment of Assignment of Rents III, Third Assignment of Assignment of Rents IV, and Third Assignment of Assignment of Rents V, collectively, the "Assignments of Rents"). See **Exhibit CCC**.

## H.    ADDITIONAL COLLATERAL

72.    On January 16, 2007, the Borrower and Countrywide executed a Security Agreement before Notary Public Leopoldo J. Cabassa Saurí under affidavit number 7,422 (the "Security Agreement"), whereby the Borrower granted Countrywide a security interest in, but not limited to, the following: equipment, fixtures and personal property. See **Exhibit DDD**.

73.    The lien over the fixtures at the Properties, equipment and personal property granted through the Security Agreement was perfected in favor of Countrywide through the filing of a UCC-1 Financing Statement at the Delaware Department of State presented for filing by the Borrower on January 18, 2007, in accordance with Chapter 9 (the "Financing Statement"). See **Exhibit EEE**.

74.    On September 19, 2007, Countrywide filed a UCC-3 Assignment Amendment in relation to the Financing Statement, whereby the Initial ML-CFC Trustee was named as the secured party of record ("Assignment Agreement I"). See **Exhibit FFF**.

75.    On November 4, 2010, the Initial ML-CFC Trustee filed a UCC-3 Assignment Amendment in relation to the Financing Statement, whereby the ML-CFC Trustee was named as the secured party of record ("Assignment Agreement II"). See **Exhibit GGG**.

76.    On October 18, 2016, the ML-CFC Trustee filed a UCC-3 Assignment Amendment in relation to the Financing Statement, whereby Plaintiff was named as the secured party of record ("Assignment Agreement III"; together with Assignment Agreement I and Assignment Agreement II, collectively, the "Assignment Agreements"). See **Exhibit HHH**.

77.    On January 16, 2007, Countrywide, Banco Popular de Puerto Rico and the Borrower executed a Three-Party Agreement Relating to Lockbox Services, whereby the parties thereto provided for the disposition of funds deposited in the Account (as defined in the Three-Party Agreement Relating to Lockbox Services) (the "Three Party Agreement"). See **Exhibit III**.

78.    On January 16, 2007, Countrywide and the Borrower executed a Collateral Assignment of Escrow Agreement, whereby the Borrower assigned, granted, delivered and transferred to Countrywide, as collateral, all of its rights, title and interest to and under that certain

agreement, by and between CB Title Group, LLC, the Borrower and Guaynabo, P.R., Commercial Properties Development Corporation, the one million five hundred and fifty thousand dollars ($1,550,000.00) held in escrow by CB Title Group, LLC (the "Assignment of Escrow Account"). See **Exhibit JJJ**.

79.     On January 16, 2007, Countrywide, BPP Retail Management LLC (hereinafter, the "Manager") and the Borrower executed a Cash Collateral Account Agreement, whereby the parties thereto provided for the administration of and constitution of a security interest over the Cash Collateral Account and the Sub-Accounts (as defined in the Cash Collateral Agreement) in favor of Countrywide (the "Cash Collateral Agreement").  See **Exhibit KKK**.

80.     The security interest over the Cash Collateral Account and the Sub-Accounts was perfected by control of the same pursuant to an agreement regarding ordering the Collection Account Bank (as defined in the Cash Collateral Agreement) to comply with instructions originated by Countrywide directing the disposition of funds without further consent by the Borrower or the Manager.

81.     On January 16, 2007, Countrywide and the Borrower executed an Operations and Maintenance Agreement, whereby the Borrower agreed to comply with an operations and management program requested by Countrywide (the "Operations Agreement").  See **Exhibit LLL**.

82.     On January 16, 2007, Countrywide, the Manager and the Borrower executed a Manager's Consent and Subordination of Management Agreement, whereby the Borrower and the Manager acknowledged that pursuant to the Mortgages, the Borrower assigned to Countrywide all of its rights, title and interest in, to and under that certain Management Agreement dated as of January 16, 2007 by and between the Borrower, the Manager and Countrywide, and subordinated

any and all liens, rights and interests held by the Manager in and to the Properties under the Management Agreement to all liens and security interests in favor of Countrywide under the Loan Documents (as defined in the Manager's Consent and Subordination of Management Agreement) (the "Subordination of Management Agreement"). See **Exhibit MMM**.

83.    On January 16, 2007, Countrywide and the Guarantor executed an Environmental Indemnity Agreement, whereby the Guarantor provided certain indemnities, representations, warranties and covenants in relation to environmental matters at the Properties (the "Indemnity Agreement"). See **Exhibit NNN**.

84.    Countrywide executed an Omnibus Assignment, effective April 12, 2007, whereby Countrywide assigned to Initial ML-CFC Trustee all of its rights, title and interest in any claims, collateral, insurance policies, certificates of deposit, letters of credit, escrow accounts, performance bonds, demands, causes of action, and any other collateral executed and/or delivered in connection with the Loan (the "First Omnibus Assignment"). See **Exhibit OOO**.

85.    On September 12, 2016, Initial ML-CFC Trustee executed an Omnibus Assignment of Loan Documents, whereby Initial ML-CFC Trustee assigned to ML-CFC Trustee all of its rights, title and interest in any claims, collateral, insurance policies, certificates of deposit, letters of credit, escrow accounts, performance bonds, demands, causes of action, and any other collateral executed and/or delivered in connection with the Loan (the "Second Omnibus Assignment"). See **Exhibit PPP**.

86.    On September 26, 2016, ML-CFC Trustee executed an Omnibus Assignment of Loan Documents, whereby ML-CFC Trustee assigned to Plaintiff all of its rights, title and interest in any claims, collateral, insurance policies, certificates of deposit, letters of credit, escrow accounts, performance bonds, demands, causes of action, and any other collateral executed and/or

delivered in connection with the Loan (the "Third Omnibus Assignment", and together with the First Omnibus Assignment and the Second Omnibus Assignment, the "Omnibus Assignments"). See **Exhibit QQQ**.

87.     Collectively, the Loan Agreement, Original Note, the Note Exchange Agreement, Replacement Promissory Note A, Replacement Promissory Note B, the Replacement Note A Allonges, the Replacement Note B Allonges, the Mortgage Notes, the Mortgages, the Omnibus Amendment Agreement, the Security Agreement, the Financing Statements, the Assignment Agreements, the Assignments of Rents, the Assignment of Escrow Account, the Cash Collateral Agreement, the Operations Agreement, the Subordination of Management Agreement, the Indemnity Agreement, the Three Party Agreement and the Omnibus Assignments, constitute the "Loan Documents".

### F.       BREACH OF THE LOAN AGREEMENT AND AMOUNTS OWED

88.     The Borrower has breached its obligations under the Loan Agreement, the Mortgage Notes and Mortgage Deeds, as well as under the other loan documents, by failing to make the agreed upon payments.

89.     Plaintiff, in a letter dated February 9, 2012, notified the Borrower that an Event of Default had occurred, and is continuing and declared the entire outstanding indebtedness to be immediately due and payable and demanded the immediate payment of the same (the **"Default Letter"**). See **Exhibit RRR**.

90.     Plaintiff's right to foreclose has become absolute.

91.     The Loan Documents obligate the Borrower, upon default, to pay for all costs and expenses of enforcing Plaintiff's rights, including reasonable attorneys' fees, which should be awarded and made part of the judgment entered by this Honorable Court, along with Plaintiff's

court costs and other legal expenses.

### IV.    FIRST CAUSE OF ACTION: COLLECTION OF MONIES *IN PERSONA*

92.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 91, set forth above.

93.    Pursuant to Puerto Rico Civil Code Article 1044, 31 L.P.R.A. § 2994, obligations arising from a contract have legal force between the contracting parties and must be fulfilled in accordance with its stipulations.

94.    Pursuant to Puerto Rico Civil Code Article 1077, 31 L.P.R.A. § 3052, when one of the parties to a contract fails to comply with its obligations under the same, the person prejudiced may demand fulfillment of the obligations and payment of interest.

95.    The Borrower has failed to comply with its obligations towards Plaintiff, which are due, payable and outstanding.  The Borrower is still in default and has not cured said status.  Thus, Plaintiff is entitled to recover Judgment *in rem* against the Borrower.

96.    As of February 1, 2017, the Borrower is responsible for paying the total amount due and outstanding under the Loan, which, as set forth in the Loan Documents, is $124,980,517.75.

97.    Thus, Plaintiff requests that this Honorable Court issue a judgment ordering the Borrower to pay the total sum owed.

### IV.    SECOND CAUSE OF ACTION: FORECLOSURE OF COLLATERAL

98.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 97, set forth above.

99.    In the absence of payment in full of the obligations set forth in the Loan Agreement, Mortgage Notes, Mortgages and other Loan Documents, Plaintiff requests that this Honorable Court awards Plaintiff an *in rem* judgment against all of the encumbered property, and order the

foreclosure of the Mortgages and public sale of the Properties.

100.    Further, that said judgment be declared to include, by virtue of the Loan Documents, a first lien upon the Properties, senior and paramount to any other interest or claim, and that the additional liens and encumbrances set forth in and granted by the Loan Document be foreclosed upon also.

101.    The amounts obtained from the foreclosure of the collateral will be used to satisfy the obligations under the Loan Agreement, Mortgage Notes, Mortgages and other Loan Documents.

102.    Further, the Plaintiff hereby respectfully requests that the Court issue an order *lis pendens* and attachment of any and all of the Borrower's property in accordance with applicable law. Said remedy serves to adequately secure Plaintiff's interests.

### IV.    THIRD CAUSE OF ACTION: APPOINTMENT OF A RECEIVER

103.    The Plaintiff incorporates by reference the allegations in paragraphs 1 through 102, set forth above.

104.    The Plaintiff requests, pursuant to Fed. R. Civ. P. 66, that a Receiver be appointed to take possession of the Properties, so that the Receiver may administer the assets and adequately protect the portion of the Plaintiff's collateral consisting of the assignment of rents and profits generated by the Properties, the right which was perfected under the laws of Puerto Rico, and is evidenced in the Assignment of Rents I, the Assignment of Rents II, the Assignment of Rents III, the Assignment of Rents IV, the Assignment of Rents V and the Assignment of Rents VI and the Mortgages.

105.    In sum, the Lender and the Borrower agreed, pursuant to the Mortgages, the Assignment of Rents I, the Assignment of Rents II, the Assignment of Rents III, the Assignment of

Rents IV, the Assignment of Rents V and the Assignment of Rents VI (which were notarized by a Puerto Rico notary public), that Lender has the right to hold, operate and manage the Properties, and to receive all rents and profits, *among other things*, upon an event of default. Those agreements were perfected under Puerto Rico law and are contained in public instruments with true date, Tit. 31, P.R. Laws Ann. § 3941, and the Mortgages have been recorded at the Property Registry of Puerto Rico.

106.    Thus, and considering the fact that the Borrower is in default, the Plaintiff is entitled to the issuance of an Order appointing a Receiver, which will protect the Plaintiff's collateral.

**WHEREFORE**, the Plaintiff requests that this Honorable Court enter judgment against the Borrower, ordering it to (a) compensate the Plaintiff in the amount of $124,980,517.75, corresponding to the outstanding obligations, calculated in accordance with the Loan Documents; (b) impose legal interest to be calculated as of February 9, 2017 onwards; (c) order the foreclosure of the Mortgages; (d) order the public sale of the Properties; (e) appoint a Receiver to take possession of, operate, and manage the Properties to be foreclosed, and collect any rent, income, or profit produced by the Properties; and, (f) any other and further relief as this Honorable Court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

I HEREBY CERTIFY: That the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

In San Juan, Puerto Rico, this 2nd day of April, 2018.

*s/ Joan Schlump*
**Joan Schlump**
USDC #207409
Email: jpeters@guillemardlaw.com

NACHMAN & GUILLEMARD, P.S.C.
P.O. Box 9949
San Juan, Puerto Rico 00908
Tel. 787-724-1212
Fax 787-725-1339