# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**ML-CFC 2007-6 PUERTO RICO PROPERTIES, LLC,**
Plaintiff,

**v.**

**BPP RETAIL PROPERTIES LLC,**
Defendant/Third-Party Plaintiff,

**v.**

**LNR PARTNERS, LLC, ET AL.,**
Third-Party Defendants.

CIV. NO. 17-1199 (RAM)

## REPORT AND RECOMMENDATION

Pending before the Court are two motions, filed by both the Plaintiff and Defendant, to resolve several discovery disputes. The first is Plaintiff ML-CFC 2007-6's ("Plaintiff" or "Lender") "Third Motion for Order Holding BPP in Contempt of Court for Violating Fourth Court Order to Produce Documents, Request for Sanctions, and Response to BPP's Motion in Compliance with Court Order" (the "Motion for Contempt"). (Docket No. 651). In the Motion for Contempt, Plaintiff requested, inter alia, that BPP be held in contempt for purportedly refusing to produce documentary evidence which the Court had ordered BPP to produce on multiple past occasions. In turn, Defendant, BPP Retail Properties, LLC ("BPP"), filed a response in opposition to Plaintiff's latest Motion for Contempt (Docket No. 663). Plaintiff replied thereto (Docket No. 679) and then BPP filed a sur-reply.[1] (Docket No. 693).

---

[1] Plaintiff requested that the Court strike BPP's sur-reply, alleging that BPP did not comply with the requirements of Rule 7 of the Local Rules of this District Court. (Docket No. 697). The motion to strike is premised on the fact that BPP's sur-reply exceeded the ten (10) page limit set forth in Local Rule 7(d) and

The second motion is BPP's Motion to Compel, which seeks an order compelling Plaintiff and Third-Party Defendants LNR Partners, LLC ("LNR"), C-III Asset Management, LLC ("C-III"), CWCapital Asset Management, LLC ("CWCapital"), and Greystone Servicing Company, LLC ("Greystone") (collectively referred to as the "Third-Party Defendants")[2] to produce three categories of documents. (Docket No. 730). Specifically, BPP requests that the Court compel Plaintiff and Third-Party Defendants to produce certain information, documents, and communications that they have allegedly refused to disclose and whose existence BPP claims was recently confirmed during deposition and evidentiary hearing testimony of the Plaintiff and the special servicers. Plaintiff and Third-Party Defendants opposed BPP's Motion to Compel (Docket No. 742) and BPP replied thereto. (Docket No. 749). Plaintiff and Third-Party Defendants then responded with a sur-reply. (Docket No. 759).

The Court addresses each motion *ad seriatim*.

## I.    <u>Relevant Procedural and Factual Background</u>

This is an action for collection of monies, foreclosure, and the appointment of a receiver. (Docket Nos. 1; 84). Plaintiff is a limited liability company whose sole member is U.S. Bank National Association, as Trustee for the Registered Holders of ML-CFC Commercial Mortgage Trust 2007-6, Commercial Mortgage Pass-Through Certificates, Series 2007-6 ("Trust"). (Docket No. 84). The Trust is a "real estate mortgage investment conduit" ("REMIC"). *Id*.[3] BPP is a limited liability company

---

BPP did not file a motion for leave to exceed the page limit. BPP, in turn, conceded that a request for excess pages was not filed before filing its sur-reply and acknowledged that such incidence was an "unfortunate oversight" on its part. BPP apologized to the Court, as well as Plaintiff and the other parties, for its error, which it nevertheless argued has caused no prejudice to the opposing parties. BPP also requested that the Court allow it retroactive leave for its filing in excess of the page limit allowed under the Local Rules. The Court appreciates BPP's candor and acknowledgment of its mistake. The Court also recognizes the benefit of having a more complete and developed record in order to resolve these highly contested discovery matters. In the interest of justice, therefore, the Court will allow and consider the sur-reply in question. BPP is nevertheless admonished to strictly observe the Local Rules of this District Court in all future filings. The Court may not always be as forgiving.

[2] The Third-Party Defendants are servicers through whom Plaintiff acts and are represented by the same counsel.

[3] According to Plaintiff, the REMIC investors are passive, and the REMIC trust acts by and through those entities authorized to act for the REMIC trust under its enabling document. (Docket No. 84). Furthermore, a REMIC is "an investment vehicle that holds mortgage loans and residential and commercial mortgaged-backed securities ("CMBS") in trust and issues securities to investors in the secondary mortgage

organized under the laws of Delaware and authorized to do business in the Commonwealth of Puerto Rico that owns and operates six (6) retail shopping centers in Puerto Rico.

In the Amended Complaint, Plaintiff asserted three causes of action against BPP. (Docket No. 84). The <u>first</u> is an action for collection of monies *in persona*, in which Plaintiff claims that it is entitled to a Judgment *in rem* against the Borrower. *Id*. The <u>second</u> is a foreclosure of all collateral cause of action based on the alleged absence of payment of BPP's obligations under the Loan Agreement and subsequent documents. *Id*. Plaintiff therefore requests an *in rem* Judgment against all of the encumbered property and an Order to foreclose the mortgages. The <u>third</u> cause of action is for the appointment of a receiver to take possession of the properties. *Id*.

In further detail, the present litigation concerns a loan originally issued on January 16, 2007, by Countrywide Commercial Real Estate Lending Finance, Inc. ("Countrywide") to BPP, pursuant to a Loan Agreement, which is secured, in part, by certain real property located in the Commonwealth of Puerto Rico. Said property consists of six (6) shopping malls. For purposes of the allegations in the Amended Complaint, Plaintiff/Lender, as the successor-in-interest to Countrywide, is the

---

market in the form of certificates representing beneficial interests in these trusts." *See In re Innkeepers USA Tr.,* 448 B.R. 131, 139 (Bankr. S.D.N.Y. 2011).

> REMICS are governed by pooling and servicing agreements ("Servicing Agreements") that set forth in detail the duties of the servicers that are responsible for administering the loans and allocating cash flows to different classes of certificate holders. Servicing agreements simultaneously protect the tax treatment of REMIC trusts and also balance the sometimes-conflicting interests of the various classes of certificate holders, as well as those of the issuer(s), servicer(s), and others.

> Typically, upon an event of default under a mortgage loan held by the REMIC, pursuant to the Servicing Agreement, such mortgage loan is transferred to and administered by a so-called "special servicer" appointed to represent the interests of the certificate holders with respect to that loan.

*In re Innkeepers USA Tr.,* 448 B.R. at 140. Plaintiff in this case explains that the Loan at issue is exactly this type of CMBS loan. The Loan was securitized into a REMIC trust following origination. The REMIC trust held the Loan until prior to this lawsuit, when the REMIC trust assigned the Loan to Plaintiff. The REMIC trust is now Plaintiff's sole member. The REMIC trust is governed by a PSA which describes the duties of the special servicer, the duties of the master servicer, and rights of investors. (*See* Receivership Hearing Ex. 96.) According to Plaintiff, this is a common CMBS structure as described by *In re Innkeepers USA Tr. supra*, and there is nothing unusual or secretive about it, as BPP tries to portray.

secured party of record for a loan which is secured by the assets and credit facilities detailed in the Amended Complaint, in the principal amount of Ninety-One Million Six Hundred Seventy-Five Thousand Dollars ($91,675,000.00) (the "Loan"). (Docket No. 84). The Loan matured on February 8, 2012, and Plaintiff claims that BPP is in default. Plaintiff thus maintains that the Loan is due and payable. *Id.*

On March 30, 2007, Countrywide and BPP executed an Omnibus Amendment Agreement, pursuant to which the Loan Agreement was modified, and the Original Note was bifurcated into two separate replacement notes: Replacement Promissory Note A and Replacement Promissory Note B. *Id.* BPP maintains that these two Replacement Notes are the notes that serve as evidence of the Loan that Plaintiff seeks to collect in this action. (*See* Docket No. 387). BPP acknowledges that the loan matured on February 8, 2012. *Id.*

According to Plaintiff, as of February 1, 2017, the total amount due and outstanding under the Loan was $124,980,517.75. (Docket No. 84). Plaintiff maintains that BPP has breached its obligations under the Loan Agreement, the Mortgage Notes and Mortgage Deeds, as well as under the other loan documents, by failing to make the agreed upon payments. *Id.* Plaintiff further claims that in a letter dated February 9, 2012, it notified BPP that an Event of Default had occurred and is continuing and declared the entire outstanding obligation to be immediately due and payable and demanded the immediate payment of the same (the "Default Letter"). (Docket No. 84). Plaintiff also claims that its right to foreclose has become absolute.

BPP answered the Amended Complaint and filed a Counterclaim against Plaintiff on April 27, 2018, which it amended on October 15, 2020. (Docket Nos. 101, 387). BPP's Counterclaim includes various allegations concerning the condition of the properties, the insurance coverage for the properties, BPP's insurance and financial condition, and Plaintiff's and/or its servicers' actions which purportedly negatively affected the properties. (Docket No. 387). More exactly, BPP lodged six (6) causes of action against Plaintiff and Third-Party Defendants in its Counterclaim. The <u>first</u> is an action for declaratory relief against Plaintiff, declaring that Plaintiff is not a successor to the rights and obligations of Countrywide in the agreements referred to

in the Amended Complaint.  The <u>second</u> is a breach of contract cause of action against Plaintiff and LNR.  BPP argues that to the extent the Court finds that Plaintiff is a successor to the rights of Countrywide, LNR, acting on behalf of Plaintiff, negligently and/or fraudulently breached and failed to comply with its obligations under the Loan Agreement and have also represented having, and has exercised, rights as purported creditor of BPP when it is not the valid assignee or transferee of the Notes or the rights under the Loan Agreement. The <u>third</u> cause of action is for collection of monies against Plaintiff and LNR for all the monies collected by such parties on behalf of Plaintiff or as servicer to Plaintiff on the basis that it purportedly acquired the rights of Countrywide. The <u>fourth</u> is a tort action against Plaintiff, LNR, and Unknown Third-Party Defendants ROES 1 through 100 ("ROES") for their continued negligent representations as BPP's creditors. The <u>fifth</u> cause of action is for unjust enrichment against Plaintiff, LNR and ROES for the monies they have received from rent payments collected in the lockbox to which they were not entitled and were unduly compensated. Finally, there is a <u>sixth</u> cause of action for attorneys' fees.

In the Counterclaim, moreover, BPP claims that Plaintiff is not the valid holder of Replacement Promissory Note A, and that Replacement Promissory Note B was lost before it was purportedly assigned to Plaintiff. (Docket No. 387). One of BPP's most noteworthy defenses to this action is that the rights of Countrywide or its successor expired in February 2015 by the passing of time and any claim or action to enforce those rights or to collect under those rights is time-barred since February 2015. BPP also argues that it has never recognized the existence and validity of any obligation towards any successor of Countrywide after February 2012.

Moving on, the parties began discovery in early 2018 and a garden variety of issues ensued. On May 21, 2018, the Court ordered that discovery shall conclude by September 14, 2018. (Docket No. 121). The parties then jointly requested that the discovery deadline be extended to October 15, 2018 (Docket No. 137) and then to February 15, 2019. (Docket No. 236). Plaintiff and Third-Party Defendants later filed a motion to extend the lay witness deposition deadline, and the deadline was extended to February 15, 2019. (Docket No. 303). On March 31, 2019, the Court

stayed the proceedings pending an appeal. (Docket No. 320). The Mandate from the Court of Appeals was received by the Court on March 23, 2020 (Docket No. 357) and the Court immediately set a briefing schedule and ordered the parties to submit a joint amended discovery timetable. (Docket No. 361).

In compliance with the Court's Order, on August 26, 2020, the parties submitted a joint proposed discovery timetable, which the Court then modified as such: all written discovery had to be concluded by December 30, 2020, and all lay witness depositions had to be completed by April 30, 2021. (Docket No. 376). Relevant to the matters at hand, following a request by the Plaintiff, the Court extended the written discovery deadline until January 29, 2021. (Docket No. 433). Neither party requested nor obtained an extension of that written discovery deadline, which was final.

Advancing to the first motion at hand, the Motion for Contempt, on November 16, 2020, Plaintiff propounded a second set of requests for production of documents on BPP. BPP served its responses and objections to the discovery requests on December 9, 2020. BPP objected to the requests and did not produce any responsive documents. As such, Plaintiff filed several motions to compel the answers to the discovery requests. After responsive pleadings by BPP, the Court entered various Orders resolving the disputes. Finally, on September 17, 2021, the Court, *for the fourth time,* Ordered BPP to produce all documents requested by Plaintiff in its "Second Motion For Order Holding BPP in Contempt of Court, Imposing Sanctions Against BPP and Awarding Lender Other Relief and Response to BPP's Motion in Compliance With Court Order" ("Second Contempt Motion," Docket No. 591). (*See* "Fourth Order" at Docket No. 628).

The Fourth Order expressly warned BPP that "[f]ailure to comply shall result in holding BPP in contempt of Court and precluding BPP from presenting evidence related to the requested documents, among other sanctions." *Id*. According to Plaintiff, BPP has knowingly and deliberately violated the Court's Fourth Order because it has not produced several documents that have been the object of extensive litigation and which the Court specifically ordered BPP to disclose. The documents

currently at issue, which will be further discussed below, are the requests for production of documents Nos. 2, 3, 4, 5, 6, and 7. (*See* Docket No. 424). Plaintiff is thus requesting (for the third time) that the Court find BPP in contempt of Court and to sanction BPP and its counsel for its repeated discovery violations.

At the same time, and related to BPP's Motion to Compel, on November 19, 2021 (over ten months *after* the written discovery deadline had elapsed), BPP sent Plaintiff and Third-Party Defendants a letter requesting further documentary evidence allegedly constituting "supplemental" discovery requests. (Docket No. 730-1). Plaintiff and Third-Party Defendants objected to the discovery requested by BPP mainly because it is untimely as the discovery deadline had already elapsed, BPP knew of the existence of the documents and information for years but did not timely request it, and because the documents and information sought are not relevant to any party's claim or defense, amongst other reasons. Because of Plaintiff and Third-Party Defendants' position, BPP has filed a Motion to Compel requesting an order compelling the production of three categories of documents identified in its letter, which will be further detailed in the forthcoming discussion. (Docket No. 730).

The Court through its Presiding Judge referred the Motion for Contempt and the Motion to Compel to the undersigned for the issuance of a Report and Recommendation. (Docket Nos. 695, 735). After reviewing the parties' extensive briefing related to both motions, the undersigned determined that a hearing was necessary to discuss the ongoing discovery disputes raised in both motions. Accordingly, on February 25, 2022, the Court held a Motion Hearing. Beginning with the Motion for Contempt, the Court heard arguments from the moving parties, as well as BPP in opposition. After hearing from the parties, the Court took the issue of contempt under advisement. The Court then heard arguments from counsel with respect to the Motion to Compel, as well as Plaintiff's and Third-Party Defendants' opposition thereto. After hearing from the parties, the Court took the matter under advisement.

Given the complexity of the case and the many issues raised in the two motions pending before the Court, a transcript of the hearing was requested. On April 18,

2022, the transcript was obtained. The Court is now in a position to resolve the present discovery disputes.

## II.   **Standard of Review**

### A.   Motion for Contempt

"A district court's authority to issue a contempt order derives from its inherent power to 'sanction . . . litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of [case] proceedings." *AngioDynamics, Inc. v. Biolitec AG*, 823 F.3d 1, 7 (1st Cir. 2016) (citations omitted). Additionally, Fed. R. Civ. P. 37(b) gives the Court wide discretion and authority to "issue further just orders" where "a party fails to obey an order to provide . . . discovery."

The United States Court of Appeals for the First Circuit has set forth the following four requirements that must be met to hold a party in civil contempt of Court: (1) the contemnor must have had notice of the Court order; (2) the order must have been "clear, definite, and unambiguous;" (3) the contemnor must have had the ability to comply with the order; and (4) the contemnor must have violated the order. *United States v. Saccoccia*, 433 F.3d 19, 26 (1st Cir. 2005). Civil contempt will lie only if the complainant can establish by clear and convincing evidence that a contemnor violated a court order. *See Gemco Latinoamerica, Inc., v. Seiko Time Corp.*, 61 F.3d 94, 98 (1st Cir. 1995).

### B.   Motion to Compel

Rule 26(b) allows a very broad range of discovery: "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). However, the information being sought must not be duplicative or burdensome, but it "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence." Fed. R. Civ. P. 26(b)(2). The term "relevant information" within Rule 26 "includes any matter that is or may become an issue in the litigation." *Whittingham v. Amherst College,* 164 F.R.D. 124, 127 (D. Mass. 1995).

When a party objects to the production of evidence, "[i]t is well settled that: [t]he party resisting production bears the burden of establishing lack of relevancy or undue burden . . . [T]he "mere statement by a party that the interrogatory . . . was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." *Aponte–Navedo, et al. v. Nalco Chemical Co., et al.,* 268 F.R.D. 31, 36–38 (D.P.R. 2010). *See, Autoridad de Carreteras y Transportación v. Transcore Atlantic*, Inc., 319 F.R.D 422, 427 (D.P.R. 2016) (internal citation omitted). "Raising blanket objections that [a] request is vague, ambiguous, and overly broad" does not meet that burden. *See, Del Carman Taboas v. Fiddler, González & Rodríguez*, PSC, No. 13-1205 (FAB), 2014 WL 12889572, at *2 (D.P.R. Apr. 2, 2014). "On the contrary, the party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Aponte–Navedo, id.* (quoting *Sánchez–Medina v. UNICCO Serv. Co.,* 265 F.R.D. 24, 27 (D.P.R. 2009)).

As to the party's obligation to supplement discovery, Rule 26(e) imposes a continuing obligation to supplement a party's responses to discovery requests "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). "This supplementation requirement increases the quality and fairness of trial by narrowing the issues and eliminating surprise." *Licciardi v. TIG Ins. Grp.*, 140 F.3d 357, 363 (1st Cir. 1998) (citation and alterations omitted). "When the duty to supplement is violated, the Court has discretion to exclude the evidence." *Rivera-Marrero v. Presbyterian Cmty. Hosp.*, 255 F. Supp. 3d 290, 296 (D.P.R. 2017); *see* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at trial, unless the failure was substantially justified or is harmless.").

*Marquez-Marin v. Garland*, 2021 WL 3553768, Civ. No. 16-1706 (JAW) (D.P.R. Aug. 11, 2021). It is fundamental that litigants abide by Rule 26(e)'s obligation to supplement.

### III.   Discussion

####     A.   Motion for Contempt

In its (third) Motion for Contempt, Plaintiff argues that BPP has knowingly and deliberately violated the Court's Fourth Order by failing to produce several documents, which the Court had explicitly ordered BPP to disclose. Plaintiff therefore requests that the Court impose severe sanctions against BPP for not producing the following documents: (1) BPP's contract with the public insurance adjuster engaged to handle the Hurricane María and Hurricane Irma insurance claims; (2) all documents and/or communications between BPP and the public adjuster it engaged to handle Hurricane María and/or Hurricane Irma insurance claims from October 2017 to date; (3) BPP's internal communications regarding its insurance claims from October 2017 to date; (4) BPP's quarterly and annual unaudited statements of operation for 2018; (5) BPP's quarterly and annual unaudited statements of operations for 2019 and 2020; and (6) BPP's annual audited financial statements for 2019 and 2020. Plaintiff insists that BPP has willfully violated the Court's various discovery orders and should be held accountable.

To be sure, the Court's Fourth Order directed BPP to produce *all* of the above identified documents, with the exception of the 2019 and 2020 audited financial statements.[4] According to Plaintiff, however, BPP only produced five (5) emails pertaining to internal communications and negotiations with the insurance adjuster but failed to produce any of the other documents which Plaintiff had specifically requested, and the Court unambiguously ordered BPP to produce. According to

---

[4] The Court's Fourth Order exempted BPP from producing the 2019 and 2020 audited financial statements, which BPP claimed not to have. (*See* Docket No. 628). When discussing these documents during the Motion Hearing, BPP *reaffirmed* its position that such financial reports do not exist and that Judge Arias-Marxuach had previously accepted those representations and, therefore, exempted BPP from producing such documents. This being the case, the Court understands that there is no longer an issue with respect to the disclosure, or lack thereof, of BPP's annual audited financial statements for 2019 and 2020. Accordingly, Plaintiff shall not maintain its insistence on the disclosure of these documents. No further action is required by BPP, or the Court, with respect to these documents.

Plaintiff, moreover, rather than complying with the Court's Order and disclosing the required documents, BPP instead produced a privilege log of documents that it would not produce and listed two documents which BPP now claims, for the first time, are protected by the attorney work-product doctrine and/or attorney-client privilege: BPP's contract with the adjuster and an October 2017 email from BPP to its outside counsel.

In response, BPP maintains that contrary to Plaintiff's arguments, it has disclosed the documents requested by Plaintiff, which the Court ordered to be produced. BPP's position is that Plaintiff filed yet another frivolous motion to find BPP in contempt for allegedly failing to produce the *same* categories of documents which BPP has either already produced or which BPP has insisted it simply does not have. BPP claims that if it has not produced any document responsive to either of the discovery requests at issue it is because such document does not exist, and it can do nothing more to "comply" with its discovery obligations. According to BPP, therefore, Plaintiff's request to hold BPP in contempt of court is unwarranted and should be denied.

Confronted with diametrically opposed positions, the Court briefly addresses the party's quarrel over each category of documents.

### 1.  *BPP's contract with the insurance adjuster*

The Court begins with the first disputed item of discovery, Request for Production of Document No. 2 (Docket No. 424 at 3), namely, BPP's contract with its public adjuster. Plaintiff claims that BPP has deliberately chosen to disregard the Court's Fourth Order, in the same way that BPP disregarded the First Order and Second Order, by continuously declining to produce its contract with the insurance adjuster. Plaintiff argues that instead of complying with the Court's multiple orders instructing BPP produce the contract at issue, BPP has refused to disclose it on numerous occasions. Now, faced with the Court's Fourth Order, instead of producing the belated item, BPP listed it on a privilege log and claimed, *for the first time*, that such contract is protected under the "attorney work-product" doctrine and will not be produced. According to Plaintiff, however, pursuant to the Puerto Rico Rules of Civil

Procedure, the Federal Rules of Evidence, and applicable case law, the document is not privileged because it is a document "made in the ordinary course of business," does not constitute attorney work-product, and should therefore be disclosed. *See,* Fed. R. Civ. P. 23.1 and Fed. R. Civ. P. 26(b)(3).

In response, BPP maintains that Plaintiff has known at all times that the contract is privileged because BPP had in the past objected to producing it, insisting on its privileged nature. In fact, BPP argues that it had included the contract in its privilege log after it was requested by Plaintiff, and that Plaintiff had not objected. Finally, BPP maintains that the contract constitutes attorney work-product because it was executed between the law firm DLA Piper LLP, as counsel for BPP, and its public adjuster in preparation for litigation against the insurer.

In reply, Plaintiff insists that the contract in question does not fall within the category of a privileged document and observes that the Court in no uncertain terms has ordered BPP to disclose it on at least four occasions and that the Court's order did not invite BPP to offer further excuses for why it has failed to produce it. Plaintiff also argues that different from BPP's current contention, it had never claimed that the contract was privileged. As such, Plaintiff maintains that any argument by BPP as to the alleged privileged nature of the contract is untimely and has been waived. In essence, Plaintiff challenges BPP's claims that the contract at issue is privileged and, in the alternatively, if the Court finds that the document is privileged, Plaintiff argues that any claim with respect to the privileged nature of the document must be deemed as waived.

During the Motion Hearing, Plaintiff correctly observed that the question is not whether the contract is *relevant* because that matter has been firmly resolved by the presiding Judge Arias-Marxuach, who found it was relevant and, for that reason, *Ordered* BPP to produce it many times over. Despite the Court's clear Order instructing BPP to produce the contract, the issue of discoverability of this contract continues to be the subject of extensive litigation. At this juncture, the crux of the matter is whether the contract with the public adjuster is indeed protected as attorney work-product and whether there is validity to BPP's designation of the

contract as privileged. Because the resolution of the Motion for Contempt requires the Court to resolve the privilege issue, after much debate, the Court **Ordered** BPP to produce the contract for an in-camera inspection by the Court and a subsequent ruling on whether the document is indeed privileged under the applicable law. BPP complied with the Court's Order and submitted the contract executed between the public adjuster and the law firm representing it, DLA Piper LLP. (*See* Docket No. 772 (Ex Parte)).

The work product doctrine was first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) and is partially codified in Fed. R. Civ. P. 26(b)(3). It prohibits disclosure of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . ." Fed. R. Civ. P. 26(b)(3). The First Circuit takes a narrow view of the work product doctrine and has articulated the standard as being a determination of whether the document was "prepared *for use* in possible litigation[.]" *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 27 (1st Cir. 2009) (en banc) (emphasis in original), *cert. denied*, 560 U.S. 924, 130 S. Ct. 3320, 176 L. Ed. 2d 1219 (2010). *See also, In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 386 F. Supp. 3d 175, 186–87 (D.P.R.), *objections overruled,* 392 F. Supp. 3d 244 (D.P.R. 2019).

Under *Textron*;

> [i]t is not enough to trigger work product protection that the *subject matter* of a document relates to a subject that might *conceivably* be litigated. Rather . . . 'the literal language of [Rule 26(b)(3)] protects materials *prepared for* any litigation or trial as long as they were prepared by or for a party to the subsequent litigation.'

*Id.* at 29 (quoting *Fed. Trade Comm'n v. Grolier Inc.*, 462 U.S. 19, 25, 103 S. Ct. 2209, 2213, 76 L. Ed. 2d 387 (1983)) (emphasis in original).

Further, the First Circuit instructed in *Textron* that:

> Nor is it enough that the materials were prepared by lawyers or represent legal thinking. Much corporate material prepared in law offices or reviewed by lawyers falls in that vast category. It is *only* work done in

> anticipation of or for trial that is protected. Even if prepared by lawyers and reflecting legal thinking, '[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision.'

*Id.* at 29–30 (quoting Fed. R. Civ. P. 26 advisory committee's note (1970)). *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 386 F. Supp. 3d 175, 187 (D.P.R.), *objections overruled,* 392 F. Supp. 3d 244 (D.P.R. 2019)

After a close review of the document at issue, it appears to the Court that BPP's contract with its public adjuster does not meet the First Circuit's high standard. The contract is comprised of a mere two pages and rather than constituting attorney work-product, it more closely resembles a document "made in the ordinary course of business," even if it was prepared by BPP's lawyers. The contract simply sets the terms of the working relationship between a contracting law firm that hired a public adjuster for its services with respect to some insurance claims. The document does not appear to have been created or prepared *for use* in litigation and thus is not protected. The Court acknowledges that BPP might *expect* litigation related to the insurance policies for Hurricane María and/or Hurricane Irma. However, such an expectation of litigation does not, in and of itself, warrant work-product protection in the First Circuit. Documents that were *not* prepared for use in litigation are *not* protected. *See, In re Fin. Oversight & Mgmt. Bd. for Puerto Rico,* 386 F. Supp. 3d at 187.

In the case at hand, the Court finds that BPP's contract with its public adjuster is not protected from disclosure under the attorney work-product doctrine. In addition to that, the Court fails to understand BPP's obstinacy and continued refusal to disclose this document when the Court, *in no uncertain terms*, has **Ordered** BPP to produce it numerous times. The Court reiterates Judge Arias' Marxuach prior Orders instructing BPP to produce the contract at issue underline forthwith.

Based on the foregoing, it is hereby **RECOMMENDED** that BPP be **ORDERED** to produce the contract to Plaintiff within five (5) business days from the

entry of the Court's final Order. Failure to produce the document should result in severe sanctions.

> **2.   *BPP's internal communications with its public adjuster regarding its Hurricane María and Hurricane Irma insurance claims***

Plaintiff had also requested that BPP produce its internal communications and e-mails with the public adjuster it engaged to handle Hurricane María and/or Hurricane Irma insurance claims dating from October 2017 to the present and BPP's internal communications regarding its insurance claims from October 2017 to date. (*See,* Requests for Production of Documents Nos. 3, 4, and 5 at Docket No. 424).

The Court has indeed **Ordered** BPP to produce such documents. In response, BPP exchanged only one (1) e-mail, claiming that no other documents responsive to Plaintiff's request existed and there are no further documented communications between BPP and its public adjuster. Plaintiff challenges the veracity of BPP's statements, arguing that it is implausible that only *one* document exists pertaining to BPP's internal communications relating to the insurance claims at issue. By contrast, BPP maintains that Plaintiff's objection is based on mere speculation and that Plaintiff wishes to believe that there are more documents to be produced and that BPP has chosen to conceal them. According to BPP, however, that is not the case. BPP firmly avers that it has produced all the existing communications responsive to Plaintiff's discovery requests, even if it is just that one email, and that there are no additional internal communications between counsel for BPP and its insurance adjuster.

The level of suspicion and acrimony between the parties in this case is high, to be sure. But the Court cannot hold a party in contempt based solely on suspicion by the other side. After a reasonable inquiry, given the representations made by BPP's counsel during the Motion Hearing to the effect that no other documents responsive to Plaintiff's written discovery requests exist or are in BPP's possession, and that BPP has produced what it has, a finding of contempt against BPP under these circumstances is not justified. The Court has no reason to doubt BPP's statements

and accepts at face value the representations made by BPP's appearing counsel. *See, Macaulay v. Anas*, 321 F.3d 45, 49 (1st Cir. 2003) ("[P]arties are bound by their attorneys' representations . . . and courts are entitled to take those representations at face value.") After all, attorneys, as officers of the Court, have an ethical duty of candor to the tribunal and courts entrust them with making truthful and accurate representations.[5]

In addition to counsel's duty of candor, in an effort to give further weight to the representations made by BPP's attorneys, the Court suggested and later Ordered BPP to obtain a declaration under penalty of perjury attesting to the fact that no more internal communications exist between BPP and its public adjuster and that the documents sought by Plaintiff related to this subject matter have all been produced. BPP had no objection and was thus Ordered to provide a statement under the penalty of perjury, pursuant to Title 28, *United States Code*, Section 1746, certifying that there are no additional documents that are responsive to Plaintiff's Request for Production of Documents numbers 3, 4, 5, 6, and 7. (*See*, Docket No. 424, ¶¶ 3, 4, 5, 6, and 7).

Where, as here, a party states that all responsive documents to a request for production of documents have been produced, then it must clearly indicate that under oath with corresponding specificity. *See, Vázquez-Fernández v. Cambridge Coll., Inc.*, 269 F.R.D. 150, 155 (D.P.R. 2010). As such, where a response to a production request is a confirmation that all responsive documents have already been produced or that no responsive documents exist in the responding party's possession, custody, or control, many courts require that the response be verified. *See, e.g., Vázquez-*

---

[5] Rule 8.4 of the Model Rules of Professional Conduct stipulates, in part, that "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Model Rules of Prof'l Conduct, R. 8.4 (2003). *See Romero-Barcelo v. Acevedo-Vila*, 275 F. Supp. 2d 177, 191 (D.P.R. 2003). "The prohibition against false statements has been interpreted to include those statements that are knowingly false, as well as statements which, with ordinary care, would have been known to be false." *Id.* Rule 11(b) also imposes a duty on attorneys to certify that they are making truthful, accurate, and factually supported representations to the Court in all written papers or oral argumentation. Fed. R. Civ. P. 11(b).

*Fernández v. Cambridge College, Inc.*, 269 F.R.D. 150, 154 (D.P.R. Aug. 30, 2010) ("[W]hen a response to a [request for] production for documents is not a production or an objection, but an answer, the party must answer under oath."); *Napolitano v. Synthes USA, LLC*, 297 F.R.D. 194, 200 (D. Conn. Jan. 30, 2014) ("[A] response that all documents have been produced does require attestation.") *Edge Sys. LLC v. Ageless Serums LLC*, No. 220CV09669FLAPVCX, 2021 WL 4497505, at *10 (C.D. Cal. Aug. 20, 2021).

That is the case here. The Court required attestation and BPP complied with the Court's Order by submitting an affidavit by Mark Mashburn, President of BPP. In the affidavit, Mark Mashburn certified that "BPP has not prepared and does not possess any documents responsive to Plaintiff's Request for Production numbers 3, 4, 5, 6, and 7, as restated in Docket No. 424 at paragraphs 3, 4, 5, 6, and 7, other than the documents that BPP has already identified and produced to Plaintiff in this case." (Docket No. 771-1). In light of counsel's representations, and this declaration by BPP's President attesting that no additional documents responsive to Plaintiff's request exist, the Court finds that the requirements for holding BPP in contempt for an alleged discovery violation are not met. The Court therefore **does not recommend** a finding of contempt against BPP with respect to this discovery matter.

### 3.    *BPP's Financial Reports*

Plaintiff similarly complains that BPP has failed to produce its quarterly and annual *unaudited* financial reports for the years 2018, 2019, and 2020 and the *audited* financial statements for the years 2015, 2016, 2018, and 2019. (*See,* Requests for Production of Documents Nos. 6 and 7 at Docket No. 424).

On one hand, BPP maintains that it has already disclosed to Plaintiff all the existing financial reports, which it has in its records, for the years requested, both audited and unaudited. BPP also claims that it neither possesses, nor keeps, additional annual or quarterly financial reports responsive to Plaintiff's requests for production of documents. On the other hand, Plaintiff challenges as incredulous BPP's contention that it does not prepare, nor have, further quarterly or annual financial reports than those already produced. In support of that claim, Plaintiff

argues that the deposition testimony of BPP's prior Corporate Controller, Stephen Pavlue, goes against BPP's representations because when he was asked how many financial "statements" he prepared for BPP on an annual basis, Mr. Pavlue attested that he did not know, "but offhand, I don't know. Thousands. I mean—."[6] (*See,* Docket No. 775-1 at 227). Based on that testimony, therefore, Plaintiff argues that BPP must have additional financial reports than those it has disclosed but that BPP is hiding the ball. Additionally, Plaintiff argues that the Court should reject BPP's representations with respect to the nonexistence of more financial reports because such claim, which was raised now for the first time, is untimely. Plaintiff questions the legitimacy of BPP's representations, arguing that if they were indeed true, BPP should have, and could have, raised the argument that no more documents existed in response to Plaintiff's original discovery request, or in response to Plaintiff's first motion to compel, which the Court granted back in April 2021, or in any other of its multiple prior pleadings related to this issue. BPP, however, never raised that argument.

In response, BPP maintains that Plaintiff's arguments are surprising because Plaintiff's position essentially puts into question the truthfulness of the representations made by BPP's counsel before the Court, confirming that no further documents exist which are responsive to Plaintiff's discovery requests related to BPP's financial reports. BPP also takes issue with Plaintiff's insistence in requesting documents that BPP has either already produced or simply does not possess. BPP argues that Plaintiff's motion is based on mere speculation and its unfounded belief that there "must" be more financial reports than those which have been produced. That belief, BPP claims, is not enough to grant Plaintiff's request for a finding of civil contempt of court.

During the Motion Hearing, after much debate, and a reasonable inquiry by the Court, BPP's counsel reiterated BPP's position that it has indeed disclosed all quarterly and annual financial statements that exist and are in BPP's possession for

---

[6] The Court Ordered Plaintiff, without objection, to provide within fourteen (14) days of the Motion Hearing the deposition transcripts of Stephen Pavlue and the Plaintiff duly complied. (*See* Docket No. 775).

the relevant years. BPP's counsel thus confirmed to the Court that no other financial reports responsive to Plaintiff's request exist, other than those already produced. Like the Court found in the preceding discussion, it has no reason to doubt BPP's statements and accepts at face value the representations made by BPP's appearing counsel. After all, attorneys, as officers of the Court, have an ethical duty of candor to the tribunal and courts entrust them with making truthful and accurate representations. Should attorneys stray from that duty of candor, they could certainly face serious consequences.

With that in mind, the undersigned is of the opinion that a finding of contempt should not attach to a party based solely on subjective suspicion by the opposing party that the former is allegedly concealing documents. More is required. So, where, a party states that all responsive documents to a request for production of documents have been produced, then it must clearly indicate that under oath with corresponding specificity. *See, Vázquez-Fernández v. Cambridge Coll., Inc.*, 269 F.R.D. 150, 155 (D.P.R. 2010). In this case, therefore, to give more credence to the representations made by BPP's attorneys, the Court **Ordered** that BPP provide a declaration under penalty of perjury attesting to the fact that the requested financial documents related to this subject matter have been produced to Plaintiff. BPP had no objection to producing such declaration and submitted an affidavit by Mark Mashburn, President of BPP, certifying under penalty of perjury, pursuant to Title 28, *United States Code*, Section 1746, that "BPP has not prepared and does not possess any documents responsive to Plaintiff's Request for Production numbers 3, 4, 5, 6, and 7, as restated in Docket No. 424 at paragraphs 3, 4, 5, 6, and 7, other than the documents that BPP has already identified and produced to Plaintiff in this case." (Docket No. 771-1). (*See*, Docket No. 424, ¶¶ 3, 4, 5, 6, and 7).

Based on the above declaration, a finding of contempt against BPP is not justified in this case. Again, the Court cannot defensibly hold BPP in civil contempt of court for allegedly failing to disclose documents when BPP is representing to the Court, and attesting under penalty of perjury, that it has disclosed all the documents

responsive to a specific discovery request. Indeed, the declaration submitted by BPP should prove sufficient to appease Plaintiff's concerns.

To wrap it up, the Court makes a final comment on Plaintiff's theory that Mr. Pavlue's statement in his deposition—to the effect that he created "thousands" of financial reports for BPP—somehow proves that BPP prepares and possesses more annual or quarterly financial reports than those it has disclosed. Such theory is unavailing. A close review of Mr. Pavlue's deposition transcript does not, like Plaintiff suggests, support its position that there could be *thousands* of *annual* or *quarterly* financial reports that have not been produced. To be exact, immediately after Mr. Pavlue said that he prepared perhaps "thousands" of "financial statements for BPP," he was asked "[h]ow many times a year do you go—since 2013, how many times per year have you gone through the process of reviewing and finalizing BPP's *annual financial statements* for the preceding year end?" To that question, Mr. Pavlue clearly answered "[s]o that would be *once per year* for an *annual, because it only happens once a year*." (*See* Docket No. 775-1 at 227-228). To be sure, Mr. Pavlue testified that he perhaps prepared thousands of "financial reports;" not thousands of *annual* or *quarterly* financial reports, which is what Plaintiff specifically requested in the written discovery request at issue. Mr. Pavlue's testimony is consistent with the representations made by BPP and its counsel that the company prepares only *one* annual financial report per year and that BPP has produced such annual report for the relevant years.

Based on the foregoing, the Court finds that the requirements for holding BPP in contempt for an alleged discovery violation with respect to this category of documents are not met here. The Court therefore does not recommend a finding of contempt against BPP with respect to this discovery dispute.

Accordingly, it is hereby **RECOMMENDED** that Plaintiff's Motion for Contempt be **DENIED**. (Docket No. 651). The Court moves on to BPP's Motion to Compel.

B. **Motion to Compel**

BPP has filed a Motion to Compel (Docket No. 730) requesting an Order compelling Plaintiffs and Third-Party Defendants to produce the following three categories of documents: (1) communications and documents related to the 2018 attempted sale of Replacement Promissory Note A; (2) the identities of all controlling certificate holders of the CMBS Trust and documents and communications generated or received by them related to the loan or the properties at issue; and (3) all "Request for Release" forms related to the transfer of the original loan file over time. *Id*.

i.    Pertinent Procedural Background

Throughout the course of this litigation, the Court granted multiple extensions of time to both parties for purposes of discovery. On January 11, 2021, Presiding Judge Arias Marxuach extended the written discovery deadline one last time and ordered **written discovery to finally conclude on January 29, 2021**. (*See* Docket No. 433). On July 8, 2021, the Court granted a limited extension of discovery only for purposes of lay witness depositions and expert witness reports and depositions. (*See* Docket No. 566). The Court also held that motions for summary judgment were due by December 2021 and set a Pretrial Conference for May 2, 2022. *Id*. Based on the parties' request, however, those two latter deadlines were subsequently extended.

Evidentiary hearings were held on March 23, 2021, March 24, 22021, September 9, 2021, September 10, 2021, December 9, 2021, December 10, 2021, and February 15, 2022. On April 13, 2022, the Court set a **Pretrial Conference for September 20, 2022**. (*See* Docket No. 800). The Court also Ordered that Rule 26(a)(3) Pre-trial disclosures were due by July 29, 2022. (*See* Docket No. 810). **Trial in this case is scheduled to commence in the second half of 2022**. (*See* Docket No. 566). Management of the litigation and control of the pretrial and trial dates are entirely in the Presiding Judge's hands.

Moving on to the matter at hand, on January 18, 2022, BPP filed the Motion to Compel at issue, asking for an order compelling Plaintiff and Third-Party Defendants to produce several information, documents, and communications. (Docket No. 730). The motion is premised on the fact that on November 19, 2021, BPP's

counsel communicated with the attorneys for the Plaintiff and Third-Party Defendants and requested that they "supplement" their disclosures and produce three distinct categories of documents that were allegedly missing. On December 3, 2021, counsel for the Plaintiff and Third-Party Defendants answered in writing and said, in pertinent part, that there was no need to supplement their prior production of documents, which was complete. They also correctly observed that the "discovery deadline expired ten months ago." In consequence, counsel for BPP invited counsel for Plaintiff and Third-Party Defendants to meet and confer to resolve the issue and a meeting took place on December 17, 2021. Although productive discussions were exchanged, Plaintiff and Third-Party Defendants indicated that they would confirm at a later date whether documents would be produced at that juncture. On December 31, 2021, counsel for Plaintiff and Third-Party Defendants confirmed in writing that their clients would not produce any additional documents pursuant to BPP's request, as it was untimely. As a result, BPP turns to the Court to compel Plaintiff and Third-Party Defendants to produce the requested written discovery.

ii.     <u>Discussion</u>

In the present case, written discovery should have been **completed by January 29, 2021**. (Docket No. 433). BPP never sought an extension of time to conduct further discovery before the deadline elapsed. Instead, more than ten (10) months *after* the close of the written discovery deadline, on November 19, 2021, BPP sent a letter to Plaintiff and Third-Party Defendants with *additional* requests for production of documents. To justify its tardiness, BPP claims that the requested documents are only now being sought because their existence was recently confirmed during Plaintiff's deposition, taken on October 21, 2021, and during testimony from recent evidentiary hearings. BPP further maintains that the documents and communications they seek could include party admissions regarding relevant matters, such as, the status of the properties and the validity of loan documents, which could also lead to the discovery of persons with knowledge of the loan or the properties. According to BPP, moreover, the written discovery requests do not demand "new" documents, but rather, merely request that Plaintiffs and Third-Party

Defendants supplement their prior disclosures, including electronically stored information.

On their part, Plaintiff and Third-Party Defendants observe that discovery in this case began in early 2018 and the deadline to serve written discovery had expired ten months *before* BPP's November 19, 2021, letter requesting additional documents. (*See,* Docket No. 433). Plaintiff and Third-Party Defendants also challenge BPP's argument that the request is for "supplemental" written discovery, rather than *new* requests for production of documents, because they note that BPP knew of the existence of the documents it is now requesting and, therefore, easily could have, and should have, sought the discovery years ago and certainly *prior* to the discovery cut-off. (*See,* Docket No. 730-1). They also take issue with BPP's claim that its request is to "supplement" prior discovery requests because they argue that some of the items now sought have *never* been requested before by BPP. Accordingly, Plaintiff and Third-Party Defendants chiefly claim that BPP's Motion to Compel should be denied for the sole reason that it is untimely. Their position is that BPP's inexplicable delay in seeking these documents should not be sanctioned. *See, Rivera-Almodovar v. Instituto Socioeconómico Comunitario*, 730 F.3d 23, 25-28 (1st Cir. 2013) ("Where, as here, a district court in the exercise of its case management authority 'sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance.'") (Internal citations omitted).

Clearly, BPP's November 19, 2021, letter requesting further documentary evidence and its January 18, 2022, Motion to Compel are untimely as they were pursued well after the Court's approved deadline to conduct written discovery—January 29, 2021. The Court could deny BPP's Motion to Compel for that reason alone. *See, e.g.* "A district court's case-management powers apply with particular force to the regulation of discovery and the reconciliation of discovery disputes." *Faigin v. Kelly*, 184 F.3d 67, 84 (1st Cir. 1999). **Several courts have used this management power to deny untimely motions to compel**. *Burgos-Martínez v. City of Worcester*, 345 F. Supp. 3d 105, 106–07 (D. Mass. 2018). *See, e.g., Modern Continental/Obayashi v. Occupational Safety & Health Review Com'n*, 196 F.3d 274,

281 (1st Cir. 1999) (upholding a district court's decision to deny a motion to compel filed *after* fact discovery deadline); *Amoah v. McKinney*, 2016 WL 3906580, at * 1 (D. Mass. July 14, 2016) ("[T]he motion [to compel] is denied as untimely."); *Berio-Ramos v. Flores-García*, 2015 WL 9169678, at *1 (D.P.R. Dec. 11, 2015) ("Discovery should have been completed by October 30, 2015. Plaintiff did not seek an extension of that deadline before it elapsed . . . Instead, she has asked for an order to compel, more than one (1) month *after* the discovery deadline expired. That is not enough."); *Flynn v. Health Advocate*, 2005 WL 288989, *7 (E. D. Penn. Feb. 8, 2005) (denying motion to compel filed past the discovery deadline). *Richardson v. City of New York*, 326 Fed. Appx. 580, 582 (2d Cir. 2009) (same).

Though the Court finds that BPP's Motion to Compel is indeed untimely, and its denial is proper based on the foregoing case law, the Court goes further. In the ordinary course, a litigant who seeks an extension of time must show good cause for the desired extension. *See,* Fed. R. Civ. P. 6(b)(1). *See, Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.,* 730 F.3d 23, 26 (1st Cir. 2013) (so holding). The standard applies to requests to extend discovery deadlines. *O'Connell v. Hyatt Hotels*, 357 F.3d 152, 154 (1st Cir. 2003). The primary measure of the good cause standard is the moving party's diligence in attempting to meet the deadline. *Id.* at 155. In this case, to be clear, BPP *never* sought an extension of the written discovery deadline. So, where, as here, the litigant is faced with an *expired* deadline, *more is required*: he must show that his failure to request an extension in a timeous manner constitutes *excusable neglect. Rivera-Almodovar*, 730 F.3d at 26. Determining the existence *vel non* of excusable neglect takes into account the totality of circumstances, including whether the record reflects intervening circumstances beyond the party's control. *Id.* at 27. *Berio-Ramos*, 2015 WL 9169678 at *1.

Consequently, the Court discusses BPP's reasons for belatedly seeking each of the three categories of documents included in its November 19, 2021, letter to

ML-CFC 2007-6 Puerto Rico, LLC v. BPP Retail Properties, LLC                                                    - 25 -
Civ. No. 17-1199 (RAM) (MDM)

determine whether it has shown good cause or excusable neglect to justify its untimely discovery efforts.[7]

### 1. *Documents related to the 2018 attempted sale of Replacement Promissory Note A*

The Court begins with the first category of documents, namely, documents and communications related to the 2018 attempted sale of Replacement Promissory Note A. BPP claims that during Alex Killick's deposition, Plaintiff disclosed the existence of documents stored in one or two digital platforms, namely, Real INSIGHT Marketplace and Ten-X, related to Plaintiff's efforts, through the special servicer, to market Replacement Promissory Note A during the months of June and July 2018 and the receipt of bids related to the sale thereto.[8] (*See,* Plaintiff's Deposition, p. 337, lines 6-11.) BPP maintains that this was the *first time* in this litigation that Plaintiff disclosed the existence of the digital platforms that were used to exchange communications related to the intended sale of Replacement Promissory Note A and, therefore, it is now requesting such communications.

As such, in an apparent attempt to divert attention from its passivity, BPP insists that it requested the sought-after discovery in November 2021, well past the discovery deadline, because it allegedly learned of the existence of digital platforms holding these documents and communications through the October 21, 2021, deposition testimony of Mr. Killick.  Plaintiff and Third-Party Defendants question the veracity of BPP's claim that its discovery request was prompted by Mr. Killick's recent deposition testimony because the actual facts are that BPP has been well aware of the attempted loan sale of Replacement Promissory Note A since mid-2018 and, as such, could have requested documents and communications related thereto at any time *prior* to the expiration of the discovery deadline. The Court agrees.

---

[7] In addition to the highly contested timeliness issue, in their briefs, the parties offer other arguments to support their respective positions, including the relevancy, or lack thereof, of the documents sought by BPP. Nevertheless, the Court has no need to engage in a discussion of these additional arguments in order to resolve the pending motion.

[8] Mr. Killick appeared as the party representative for Plaintiff.

It is undisputed that back in June 2018, when the parties were participating in the settlement program of the First Circuit's Civil Appeals Management Plan ("CAMP"), BPP learned that there was an attempt to sell Replacement Promissory Note A and that there was a bidding process for such efforts. It is also undisputed that the documents which BPP now seeks all pertain to such attempted loan sale process from 2018. Indeed, BPP does not challenge the fact that it *knew* about the attempted loan sale and its bidding process *since mid-2018*. Moreover, as it became evident during the Motion Hearing, evidence related to this attempted loan sale and its bidding process was the object of many discovery disputes between the parties and extensive discussions during the CAMP proceeding.

As such, if BPP wanted to conduct discovery on the communications exchanged between Plaintiff and any of the Third-Party Defendants related to the attempted loan sale and bid process of Replacement Promissory Note A, it could have, and *should* have, done so at any time between June/July 2018 through January 21, 2021, and *before* the discovery deadline elapsed. In the same vein, if BPP believed that documents related to the attempted sale of Replacement Promissory Note A were relevant to its claims or defenses, BPP *should* have conducted *timely* discovery on the matter. But it did not and its delay in seeking such discovery is inexcusable.

Even if BPP "confirmed" the existence of digital platforms holding information and documents about communications related to the attempted loan sale of Replacement Promissory Note A through the recent testimony of Mr. Killick, there is no reason why BPP could not have acted diligently to request such documentation, all of which, relate to facts that it had knowledge of since June/July 2018. The fact that BPP purportedly learned in October 2021 that some of those documents are *stored* in digital platforms (rather than physically) does not excuse BPP's extreme delay in requesting them well-past the written discovery cutoff. In other words, though it might be true that BPP learned of the existence of *digital platforms* holding records regarding the proposed sale and bid process of Replacement Promissory Note A, that does not excuse its procrastination. If BPP had requested these communications in a timely manner, it would have learned of the existence of these

digital platforms in due time and would have been entitled to conduct further discovery on them within the Court's deadline. To be sure, BPP's discovery request did not require heroic measures, nor did it involve newly discovered information, like BPP seems to suggest. The belated discovery request also did not involve information solely in the possession of a third party nor did it require confirmation of its existence in order to have timely requested it.

To wrap it up, BPP does not offer a reasonable nor justifiable explanation for its undue delay, nor does BPP show good cause or excusable neglect for waiting until November 19, 2021, to serve belated written discovery requests when the deadline to serve written discovery expired on January 29, 2021. (*See* Docket No. 433). As such, the Court cannot sanction BPP's inaction and clear disobedience of the Court's deadlines. *See, e.g.*, *Berio-Ramos v. Flores-García,* 2015 WL 9169678 (D.P.R. Dec. 11, 2015) (denying motion to compel as untimely because it was filed more than one (1) month after the discovery deadline expired); *Richardson v. City of New York*, 326 Fed. Appx. 580, 581 (2d Cir. 2009) (denying as untimely motion to compel filed over one month after the close of discovery); *Flynn v. Health Advocate*, 2005 WL 288989, *7 (E.D. Penn. Feb. 8, 2005) (denying motion to compel filed past the discovery deadline). Accordingly, BPP's untimely request for the Court to compel Plaintiffs and Third-Party Defendants to produce this category of documents should be **DENIED**.

Though the above is dispositive of the matter, there is one more reason to deny BPP's invitation for an order to compel. BPP also argues that its request to discover this first category of documents is not a *new* request, but rather one to "supplement" a past written discovery request which had already been propounded. As such, BPP claims that the request, though tardy, is proper and should be approved. To support its proposition, BPP argues that it had requested that Plaintiff produce all "Documents," and "Communications," as these terms were defined in BPP's Requests for Production of Documents No. 4, "*related to the properties or the loan agreement* between them or anyone acting on their behalf and any third party, leasing agent, credit reporting agency, investor, appraiser, loan servicer or trustee of the Plaintiff." (*See*, Exhibit I at Request for Production of Documents No. 4 of Docket No. 730).

Plaintiff and Third-Party Defendants challenge BPP's contention by arguing that because BPP cannot excuse its close-to-a-year delay in requesting the newly sought-after documents, BPP instead attempts to shift blame to Plaintiff by arguing that it had a duty to supplement its discovery responses to include the loan sale documents. BPP's argument is unavailing.

The original request for production of documents that BPP points to in an effort to show that its untimely request actually pertains to "supplementation," rather than a new request for discovery, clearly seeks documents and communications related to the *properties* or the loan *agreement*. It does not, by any means, relate to, or request, the same type of documents and communications that BPP wishes to obtain now, all of which pertain to the intended or attempted sale of *Replacement Promissory Note A* that took place in July 2018, as well as the *bidding process* of that attempted sale. It is thus pellucid that BPP's belated written discovery request seeks *new* information that is *not* related to a past request for production of documents and is therefore *not* a request to supplement prior discovery. The Court should not allow additional written discovery requests at this juncture given that the deadline to conduct written discovery expired almost one year and six months ago. Furthermore, as Plaintiff argues, there is no duty to supplement that which was never requested as part of an actual discovery request. *See,* Fed. R. Civ. P. 26(e) (only requiring parties to supplement their responses to actual requests). Because BPP did not show that it had made a timely request for the disclosure of the documents it now seeks, Plaintiff has no duty to disclose that which was never requested within the allowed timeframe. BPP's claim that its request is one for "supplementation" does not hold water.

In conclusion, BPP failed to show excusable neglect or good cause for its more than ten-month delay in requesting the first category of disputed documents and the Court should not sanction its procrastination.[9]

---

[9] In their briefs, as well as during the Motion Hearing, the parties discussed *ad nauseum* the relevancy of these documents. While the Court need not discuss whether the documents are indeed relevant to any party's claims or defenses, it nevertheless, notes the following. Plaintiff and Third-Party Defendants note that, as further evidence that the Loan Sale Documents are irrelevant, they observe that this Court, through its Presiding Judge, *sustained* a relevancy objection at the receivership hearing to BPP's attempted cross-examination regarding the Loan Sale:

> 2. ***Identity of the controlling certificate holders of the CMBS Trust from June 2018 to the present and related documents and communications***

Moving on to the second category of documents, BPP requests that Plaintiff and Third-Party Defendants be ordered to disclose the identity of the controlling certificate holders of the CMBS Trust from June 2018 to the present and to produce any "Documents" or "Communications" exchanged with them by the Plaintiff and Third-Party Defendants related to the loan, the notes, and/or the properties. BPP argues that it is entitled to know the identity of all of the entities or persons who have been the controlling certificate holders of the Trust because the holder of the CMBS Trust is the "real party in interest."

Plaintiff and Third-Party Defendants object to producing such evidence, claiming essentially that: (1) as before, the discovery deadline expired almost a full year ago and BPP's Motion to Compel is untimely and cannot resurrect the long-expired written discovery deadline; (2) BPP has been requesting the identity of the controlling certificate holders since 2018 and Plaintiff has repeatedly objected to producing the same, but BPP never moved to compel its production thereby forfeiting the right to do so now—*after* the deadline for written discovery expired; and (3) information regarding the identity of the controlling certificate holders is not relevant to any of the claims or defenses in this action.

---

**Q.** What were you aware of about the process that had taken place?
**A.** While we were ultimately made aware of the fact that the loans had been marketed, I don't remember how widely, but we ultimately had a list of who had bid and what those numbers were.
**Q.** What were those numbers?
**Ms. Murarova**: Objection, relevance.
**Mr. Fernandez**: It's very relevant. It's been made reference [to] a 150 million loan here, and that's not the case. The collateral is not worth that, based on the evidence.
**Ms. Murarova**: Objection, relevance to the value of potential note sales that parties may have been discussing in 2018.
**THE COURT**: *Granted*.

(*See,* Docket No. 472, Tr. Day 1, 225:10-25; 226:1-2). The Court leaves it at that.

Like Plaintiff and Third-Party Defendants point out, the dispute over whether the identity of the controlling certificate holders is discoverable is *not* new. BPP first requested the identities of the controlling certificate holders in an interrogatory back in May 2018. In Plaintiff's July 2018 response thereto, Plaintiff objected to disclosing such information claiming that it was not relevant to Plaintiff's allegations in its Amended Complaint.[10] Confronted with Plaintiff's objection, BPP requested a meet and confer which was held between the parties on September 28, 2018. During the meet and confer, Plaintiff maintained its objection. BPP followed up with a letter dated February 13, 2019, confirming: "We deem exhausted all efforts to try to amicably resolve Plaintiff's objections to interrogator[y] number[ ] 4." *See,* Exhibit B to Docket No. 742. Following that letter, however, BPP did not pursue the matter further either with the Court or with Plaintiff.

One year later, on December 17, 2020, BPP served interrogatories on Third-Party Defendants and once again requested the identities of the investors or registered certificate holders of the CMBS Trust. Third-Party Defendants (like Plaintiff) objected on the same basis that Plaintiff had objected to in 2018. BPP then requested a meet and confer which was held on March 2, 2021, and Third-Party Defendants maintained their objection. BPP thereafter failed to pursue the matter with the Court to resolve the party's differences, until now.

It is undisputed that BPP tried to discover the identity of the controlling certificate holders prior to the expiration of the January 19, 2021, written discovery deadline, however, BPP was unable to obtain such information due to Plaintiff's and Third-Party Defendants' objections. Though BPP made a timely request for this information, the problem is that BPP was well aware of Plaintiff's objection to producing the identity of the certificate holders *since July 2018*. As such, BPP could

---

[10] Plaintiff argues that it is a limited liability company whose sole member is a REMIC trust, acting through its trustee, U.S. Bank National Association. Trustee U.S. Bank National Association is the "real party to the controversy" and the law permits trustees "to sue in their own right, without regard to the citizenship of trust beneficiaries." *Navarro Sav. Ass'n. v. Lee,* 446 U.S. 458, 464 (1980) (citations omitted). Plaintiff moreover argues that pursuant to the Opinion and Order of this Court at Docket No. 77, the above principle is the law of the case and, as such, the identities of the certificate holders are not relevant to this lawsuit. For the reasons the Court will espouse in the coming discussion, it is not required to decide whether the identities of the controlling certificate holders are relevant to the present action.

have easily filed a motion to compel on this issue in a timely manner, that is, within the timeframe allowed by the Court to conduct written discovery. BPP, however, sat idly by and did nothing. If BPP deemed this information to be relevant to its claims and intended to continue its pursuit of this discovery, it *should* have knocked on the Court's door following its failed attempts to meet and confer, which concluded in *February 13, 2019*, when BPP confirmed in writing that it "deem[ed] exhausted all efforts to try to amicably resolve Plaintiff's objections to interrogator[y] number[ ] 4." But BPP failed to diligently pursue the quest for this information, rather, BPP waited until almost one (1) year *after* the written discovery deadline *expired* to seek the Court's assistance. That is not acceptable.

BPP has failed to show that its failure to seek the Court's assistance in a timeous manner constitutes excusable neglect. There were no circumstances beyond BPP's control justifying the order it now seeks. As such, BPP's efforts are simply too-little-too late. *See, Vélez v. Awning Windows, Inc.,* 375 F.3d 35, 41 (1st Cir. 2004); *Berio-Ramos v. Flores-García,* 2015 WL 9169678 (D.P.R. Dec. 11, 2015) (denying a motion to compel as untimely because it was filed more than one (1) month *after* the discovery deadline expired); *Rivera-Almodovar*, 730 F.3d at 26 (movant showed no circumstances beyond her control to justify the delay). *See also, Richardson v. City of New York*, 326 Fed. Appx. 580, 581 (2d Cir. 2009) (denying as untimely a motion to compel filed over one month *after* the close of discovery); *Flynn v. Health Advocate*, 2005 WL 288989, *7 (E.D. Penn. Feb. 8, 2005) (denying motion to compel filed *past* the discovery deadline); *Claytor v. Computer Associates*. 211 F.R.D. 665, 666-667 (D. Kansas 2003) (denying motion to conduct discovery *after* deadline expired, since plaintiff should have brought the matter before the court *prior* to the expiration of deadline); *Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7, 10 (1st Cir. 2007) (upholding denial of Fed. R. Civ. P. 56(f) motion where movant failed to exercise due diligence in conducting discovery but rather "simply frittered the time away" despite the "generous discovery period allowed by the district court") (internal citation omitted).

Accordingly, BPP's Motion to Compel the identity of the controlling certificate holders should be **DENIED.**

With respect to the second part of BPP's request, namely, to produce any "documents" or "communications" "exchanged with the controlling certificate holders and the Plaintiff and the Third-Party Defendants related to the loan, the notes, and/or the properties," there is another element which tilts the balance further against allowing BPP's request. (*See,* Docket No. 730 at 10). Contrary to the *identities* of the controlling certificate holders, which BPP *had* requested since 2018, it appears that BPP *never* requested "documents" and "communications" with the controlling certificate holders *prior* to its January 18, 2022, Motion to Compel. In their opposition to the Motion to Compel, therefore, Plaintiff and Third-Party Defendants observe that BPP's prior requests for production of documents *never* included a request for documents and communications with the controlling certificate holders. Further, they claim that BPP's November 19, 2021, letter requesting further written discovery did *not* seek to discover *communications* with the controlling certificate holders, but rather *only* requested the *identities* of the certificate holders, which is what BPP had requested in the past. The Court looked for BPP's response to this allegation in its reply but found no clarification on this point.

As such, it appears that this part of BPP's request constitutes a *new* discovery request made more than one (1) year *after* the conclusion of the written discovery deadline and was made *for the first time* in BPP's Motion to Compel. So, in addition to the discovery request being untimely and inexcusable, it constitutes a *new* discovery request made pursuant to a motion to compel, which is an improper vehicle for discovery requests. It should be clear by now that the Court cannot compel a party to produce that which it was never asked to produce before. *See, Wells Real Estate Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship*, S.E., 615 F.3d 45, 58-59 (1st Cir. 2010) (affirming the denial of a motion to compel where the original request was made *after* the discovery deadline).

Based on the foregoing discussion, BPP's Motion to Compel the written discovery sought in the second category of documents should be **DENIED**.

### 3.  *Loan Request Transfer Forms*

Finally, the Court moves on to the third category of documents requested by BPP, the Loan Request Transfer Forms or "Request for Release" forms relating to the transfer of the original loan file over time. BPP claims that during the course of discovery, Plaintiff produced two "Request for Release" forms but, "unexplainably," has failed to produce all of them. In response, Plaintiff and Third-Party Defendants argue that BPP's quest for this discovery is untimely because the deadline to conclude written discovery expired over ten (10) moths before the request was made and BPP has known of the existence of these documents for years. As such, Plaintiff and Third-Party Defendants object to disclosing additional documents than those which have already been exchanged within the *allowed* discovery timetable. In its reply, BPP maintains that such position misses the mark because these forms can serve to support BPP's defense of lack of standing or to contest the validity of the undated and dated assignments on record.[11] BPP's self-serving assessment is unavailing.

For starters, BPP does not contest the fact that it has known about the "Request for Release" forms for several years now. Indeed, by BPP's own admission, Plaintiff and Third-Party Defendants had disclosed two of these forms during the discovery process. As such, BPP overlooks the fact that, while it considers these forms to be relevant to one of its defenses, it nonetheless opted to dawdle and failed to request *additional* "Request for Release" forms in a timely manner. BPP waited until November 19, 2021, almost one year *after* the conclusion of the written discovery deadline to request documents that BPP knew existed well before the discovery cutoff. The Court cannot reward BPP's procrastination, especially when BPP does not offer a rational explanation for its delay. BPP has failed to make a showing of good cause or excusable neglect for waiting to request these forms nearly one (1) year *past* the January 29, 2021, cutoff. BPP's "lackadaisical approach to discovery" warrants denial of its Motion to Compel. *See, Berio-Ramos, supra,* (denying a motion to compel as

---

[11] Plaintiff and Third-Party Defendants claim that the "Request for Release" forms are not relevant to any party's claim or defense, but the Court needs not reach this determination.

untimely because it was filed more than one (1) month *after* the discovery deadline expired); *Rivera-Almodovar*, 730 F.3d at 25-26 (upholding denial of motion to extend discovery deadline where movant "sat on her hands for nearly a year before requesting the disputed documents," such that her "plight was the result of her lackadaisical approach to discovery").

What makes BPP's actions even more egregious is the fact that BPP never requested an extension of the discovery deadline *prior* to its expiration, yet BPP acts as if it is entitled to continue making discovery requests *per secula seculorum*, even beyond the Court's deadline. BPP is clearly mistaken. The parties should not presume to amend Court Orders on their own. In the same vein, litigants are not authorized to bypass court established deadlines. *See, Rosario-Díaz v. González*, 140 F.3d 312, 314-315 (1st Cir. 1998) (noting that litigants have an unflagging duty to comply with clearly communicated case-management orders). *See also, Rivera-Almodovar*, 730 F.3d at 25-28 (1st Cir. 2013) ("Where, as here, a district court in the exercise of its case management authority 'sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance.'"). BPP ignored the Court's written discovery deadline at its peril. Consequently, the Court recommends that BPP's Motion to Compel the third category of documents be **DENIED**.

To wrap it up, "courts—like the Deity—are more prone to help those who help themselves." *Williams v. Drake*, 146 F.3d 44, 50 (1st Cir. 1998). So it is here. BPP's last minute discovery efforts are too-little-too-late. In the present case, the deadline to conduct written discovery has long since passed, BPP failed to demonstrate good cause or excusable neglect for its delay, and a Pretrial Conference is scheduled for **September 20, 2022**—that is, in three months' time. As such, the record does not justify the remedy requested by BPP. It is therefore **RECOMMENDED** that BPP's Motion to Compel at Docket No. 730 be **DENIED**.

**IT IS SO RECOMMENDED.**

The parties have fourteen days to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this <u>28th</u> day of June 2022.

MARSHAL D. MORGAN
United States Magistrate Judge